[850 NYS2d 14]

SAM WYLY, Respondent, v MILBERG WEISS BERSHAD & SCHUL-
MAN, LLP, et al., Appellants.

First Department, December 27, 2007

## APPEARANCES OF COUNSEL

*Milberg Weiss & Bershad, LLP*, New York City (*Barry A. Weprin* and *Todd L. Kammerman* of counsel), and *Stull, Stull & Brody, LLP*, New York City (*Jules Brody* of counsel), for appellants.

*Bickel & Brewer*, New York City (*Luke McGrath, William A. Brewer III, Alexander D. Widell* and *Nafiz Cekirge* of counsel), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether petitioner, an absent class member, is entitled to a judgment compelling the production of respondent co-counsels' files, including attorney work product, generated during the course of two consolidated federal class actions.

Petitioner Sam Wyly, on or about April 7, 2000, acquired 971,865 share options of Computer Associates International, Inc. (CA), a large, publicly traded, independent manufacturer of information technology management software. Respondents Milberg Weiss Bershad & Schulman, LLP, Stull Stull & Brody, LLP, and Schiffrin Barroway Topaz & Kessler, LLP are law firms which were appointed co-lead counsel after a number of class actions, commenced against CA in the United States District Court for the Eastern District of New York (the District Court), were consolidated for settlement.

The first wave of class actions was in response to an announcement by CA, on July 21, 1998, that it expected a slowdown in its growth rate over the upcoming quarters, which prompted its stock to plummet 31% in value. The 11 resulting class actions were consolidated under the caption *In re Computer Associates Class Action Securities Litigation* (the 1998 Class Action), and assert that CA, and a number of its officers and directors, engaged in revenue-inflating accounting practices

and made materially false and misleading statements about CA's financial performance and condition, in violation of sections 10 (b) and 20 (a) of the Securities Exchange Act of 1934.

In the period between February 2002 and May 2002, following an announcement that the federal government had launched a probe into CA's accounting practices, 13 additional class action complaints were filed in the District Court against CA and certain of its current and former officers and directors. These class actions, the allegations of which echoed those of the first group of class actions, were also consolidated into a single class action styled *In re Computer Associates 2002 Class Action Securities Litigation* (the 2002 Class Action).

The 1998 Class Action and the 2002 Class Action were subsequently consolidated for settlement and on December 5, 2003, Judge Thomas C. Platt of the District Court held a fairness hearing concerning the proposed settlement. Judge Platt, by order dated December 16, 2003, thereafter dismissed the class action complaints and approved the settlement and the award of attorneys' fees.

Petitioner, by letter dated October 18, 2004, wrote to Barry A. Weprin, Esq. of respondent Milberg Weiss Bershad & Schulman, LLP (Milberg Weiss) and informed him that he believed the settlement had been procured by fraud based upon: a guilty plea by CA's former general counsel, who admitted he had impeded the government investigation of CA's accounting practices; and a report in the Wall Street Journal which stated that CA's outside counsel had in its possession 23 boxes of undisclosed documents demonstrating that CA's employees, including its general counsel, had engaged in securities fraud. Accordingly, petitioner requested that Milberg Weiss file a motion, pursuant to rule 60 (b) of the Federal Rules of Civil Procedure, to relieve the settlement class from the final judgment approving the settlement.

Milberg Weiss, by letter dated November 24, 2004, informed petitioner that it did not intend to move to reopen the judgment. As a result, on December 7, 2004, petitioner filed his own rule 60 (b) motion in the District Court based upon the same grounds he delineated in his October 18 letter to Milberg Weiss. Petitioner, by letter dated January 24, 2005, thereafter requested that respondents provide him access to the firms' discovery materials and work product related to the CA actions based upon the attorney-client relationship that existed between himself, as a class member, and respondents as co-lead

counsel. Respondents, by letter dated January 28, 2005, refused to respond to petitioner's request pending Judge Platt's ruling on discovery matters. Petitioner answered in a letter dated February 8, 2005, in which he advised respondents that the discovery was being sought pursuant to their attorney-client relationship, and that Judge Platt's ruling would, therefore, be "irrelevant."

On February 3, 2005, Judge Platt referred the discovery issues to a federal magistrate and, on June 14, 2005, petitioner was permitted discovery of the contents of the 23 boxes. Judge Platt, in an order dated September 12, 2007,[1] found that petitioner had failed to

> "set forth cause to permit further discovery to be conducted in conjunction with the[ ] 60 (b) motions. This Court has repeatedly made clear that additional discovery was to be confined to the 'fraud' alleged to be within the '23 boxes.' To date, . . . Wyly . . . has [not] produced any 'new' evidence of fraud upon this Court and consequently, [has] failed to establish that the contents of the '23 boxes' allegedly withheld during discovery and prior to settlement warranted granting further discovery and the reopening of the 2003 Settlement" (*In re Computer Assoc. Class Action Sec. Litig.*, 2007 WL 2713336,*3, 2007 US Dist LEXIS 67928, *12-13 [ED NY 2007]).

In the interim, by notice of petition and petition dated April 1, 2005, petitioner commenced this CPLR article 4 special proceeding seeking a judgment directing respondents to "turn over their files" in connection with the two class actions, including, among other things, "all e-mails, attorneys' notes, internal memoranda, document requests, indices, privilege logs, drafts and research related to [r]espondents' representation of [Wyly] and other class members in their prosecution of the Class Actions." Petitioner, in support of the petition, asserted that as a class member, he "enjoys all privileges and rights pursuant to the attorney-client relationship between [r]espondents and Settlement Class members," including the right to access "attorney work product that was received, created, or maintained for the benefit of the entire Settlement Class."

---

**1.** This order resulted from a motion brought by the CA Special Litigation Committee to clarify or amend the court's August 2, 2007 order. The motion was denied.

Respondents removed the petition to the United States District Court for the Southern District of New York, where petitioner promptly moved to remand the matter back to Supreme Court. Judge Daniels granted petitioner's motion for remand, but denied him costs and fees, opining that "[c]onsidering the dubious nature of petitioner's cause of action and the surrounding circumstances, the award of fees in this instance is unwarranted" (*Wyly v Milberg Weiss Bershad & Schulman, LLP*, 2005 WL 1606034, *1, 2005 US Dist LEXIS 13666, *5 [SD NY 2005]). Judge Daniels added the caveat that "[t]he granting of this motion to remand in no way indicates an opinion by this Court that this case presents viable claims in state court" (*Wyly v Milberg Weiss Bershad & Schulman, LLP*, 2005 WL 1606034, *1 n 4, 2005 US Dist LEXIS 13666, *5 n 4). Respondents thereafter answered the petition, asserting that petitioner's claims were barred by the attorney work-product privilege.

The hearing court, in an order and judgment entered February 20, 2007, granted the petition and directed respondents to turn over the files generated in the consolidated class actions to petitioner, including documents containing work product, except for those documents for which they provided a privilege log in compliance with CPLR 3122 (b). In reaching its determination, the hearing court relied primarily on the Court of Appeals holding in *Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn* (91 NY2d 30 [1997]), which found that at the termination of the attorney-client relationship, a client, presumptively, has full right of access, with narrow exceptions, to all of the documents in the attorneys' file, including work-product material, where no claim for unpaid legal fees is outstanding. However, because we now find *Sage Realty* distinguishable based upon the nature of petitioner's status as an absent class member, we reverse.

*Sage Realty* concerned a complex, $175 million mortgage financing and ownership restructuring deal in which the petitioner real estate developer demanded that the attorneys who represented it during the transactions turn over all of their files related to that matter. The law firm, in response, declined to turn over certain documents, including drafts, internal memoranda, markups, research, and other papers reflecting its opinions and thought processes. The Court of Appeals, however,

ordered the firm to turn over all of its files,[2] and pronounced its decision to adopt the view of the majority of courts and state legal ethics advisory bodies which recognize the right of a client not only to the end product of its attorneys' services, but also to the attorneys' work product, which documents reflect the attorneys' efforts in reaching the end product.

*Sage Realty*, however, involved an attorney-client relationship in the traditional sense, in that the single voice of a client governs, among other things, the lawyer's conduct; the direction of a case, including any decision on when, if, and under what terms it should be settled; and the attorney's continued employment. In contrast, it has been observed, by courts and commentators alike, that the relationship between appointed counsel and an absent member in a class action differs fundamentally from that found in the traditional relationship (*see e.g.* Third Circuit Task Force Report, *Selection of Class Counsel*, 208 FRD 340, 347-348 [2002] ["(a)bsent class members are not individual clients. Thus, the ordinary attorney-client relationship does not exist between each class member and class counsel"]; *In re Community Bank of N. Va.*, 418 F3d 277, 313 [2005] ["courts have recognized that class counsel do not possess a traditional attorney-client relationship with absent class members"]; *In re J.P. Morgan Chase Cash Balance Litig.*, 242 FRD 265, 277 [2007] ["(a)ppointment of class counsel is an extraordinary practice with respect to dictating and limiting the class members' control over the attorney-client relationship and thus requires a heightened level of scrutiny to ensure that the interests of the class members are adequately represented and protected"]; *In re Chicago Flood Litig.*, 289 Ill App 3d 937, 942, 682 NE2d 421, 425 [1997] ["attorney-client relationship is limited, however, and is different in the class context than it is in a traditional, nonclass situation"]; 2 Business and Commercial Litigation in the Federal Courts § 16:3 [2d ed] ["(a)bsent class members not only do not get to select their own counsel, but often they are unaware that their legal rights may be

**2.** The law firm was not required to disclose documents which might violate a duty of nondisclosure owed to a third party, or otherwise imposed by law. The Court of Appeals also opined that nonaccess would be permissible as to firm documents intended for internal law office review and use, noting that " '[t]he need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret from the client involved' " (91 NY2d at 37, quoting Restatement [Third] of Law Governing Lawyers [Proposed Final Draft No. 1, 1996] § 58, Comment *c*).

bartered and compromised by counsel who are not constrained by a traditional attorney-client relationship with the absent class members"]; G. Donald Puckett, Note, *Peering Into a Black Box: Discovery and Adequate Attorney Representation for Class Action Settlements,* 77 Tex L Rev 1271, 1291 [1999] ["courts have recognized that the class action context differs drastically from the traditional bipolar attorney-client relationship, and that salient differences make a strict application of traditional ethics rules to class representation both unwise and impractical"]; Howard W. Erichson, *Beyond the Class Action: Lawyer Loyalty and Client Autonomy in Non-Class Collective Representation,* 2003 U Chi Legal F 519, 524 [2003] ["(i)n a class action, numerous plaintiffs depend upon the work of counsel with whom they have no meaningful individual lawyer-client relationship, (and) over whom they have no meaningful control . . .'']).

The United States Supreme Court, in *Phillips Petroleum Co. v Shutts* (472 US 797, 810-811 [1985]), succinctly addressed not only the status of an absent class action plaintiff, but also the relative detachment, and concomitant security, that characterizes that plaintiff's involvement in the litigation:

> "Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. In most class actions an absent plaintiff is provided at least with an opportunity to 'opt out' of the class, and if he takes advantage of that opportunity he is removed from the litigation entirely."

The Supreme Court further opined that:

> "absent plaintiff class members are not subject to other burdens imposed upon defendants. They need not hire counsel or appear. They are almost never subject to counterclaims or cross-claims, or liability for fees or costs. Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages . . . ." (*Id.* at 810 [footnote omitted].)

In sum, while petitioner herein, as an absent class member in the federal action, was entitled to some of the benefits of the

attorney-client relationship, such as the right to privileged communications with class counsel and the prohibition against attempts by defendants' counsel to communicate with him, he had no right to direct the course of the litigation, testify at trial, participate in discovery, or dismiss class counsel. Moreover, petitioner was free to hire his own counsel to appear in the class action if he wished to employ a traditional attorney-client relationship, although his input into the litigation would still have been curtailed, or to opt out of the class action altogether if he was unsatisfied with his limited role.

Given the above-delineated disparity in the roles, responsibilities, and potential liabilities assumed by a client in the traditional attorney-client context, as opposed to an absent class member's relationship to class counsel, and his/her status as a litigant, coupled with the potential for class counsel to be unduly burdened, even after the end of litigation, by a multitude of requests from absent class members for counsel's entire file, we reject a blanket extension of *Sage Realty*'s presumptive-entitlement right to absent class members, and find that the better practice is to require absent class members to establish their entitlement to class counsel's file on a case-by-case basis. Petitioner, in this matter, has failed to shoulder that burden.

Initially, we note that petitioner, admittedly, was granted access, by the District Court, to the vast majority of the material in respondents' files, including discovery materials, as well as the mysterious 23 boxes previously withheld by CA. Petitioner, armed with those volumes of documents, still offers nothing, other than mere speculation, that the work product he seeks will convince the District Court, or the United States Court of Appeals for the Second Circuit, that his rule 60 (b) motion should have been granted, and we decline to countenance petitioner's use of this article 4 proceeding as a vehicle to launch a fishing expedition. Moreover, as already noted, Judge Platt, in his August 2, 2007 and September 12, 2007 orders denying petitioner's rule 60 (b) motion, made it very clear that petitioner's moving papers "failed to set forth cause to permit further discovery."

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Joan A. Madden, J.), entered February 20, 2007, which granted petitioner's application to compel respondents' production of files relating to their prosecution of two consolidated class actions in federal court, should

be reversed, on the law, with costs, the petition denied and the proceeding dismissed.

ANDRIAS, J.P., SWEENY and MALONE, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered February 20, 2007, reversed, on the law, with costs, the petition denied and the proceeding dismissed.