[908 NE2d 888, 880 NYS2d 898]

Sam Wyly, Appellant, v Milberg Weiss Bershad & Schulman, LLP, et al., Respondents.

Argued March 26, 2009; decided May 7, 2009

## POINTS OF COUNSEL

*Bickel & Brewer,* New York City (*Luke A. McGrath, William A. Brewer III, Alexander D. Widell* and *Robert F. Dannhauser* of counsel), for appellant. I. The Appellate Division decision should be reversed because it conflicts with this Court's prior decision in *Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn* (91 NY2d 30 [1997]). (*Van Gemert v Boeing Co.,* 590 F2d 433; *Kleiner v First Natl. Bank of Atl.,* 751 F2d 1193; *Fulco v Continental Cablevision, Inc.,* 789 F Supp 45; *Tedesco v Mishkin,* 629 F Supp 1474; *Graubard Mollen Dannett & Horowitz v Moskovitz,* 86 NY2d 112; *Meinhard v Salmon,* 249 NY 458; *Greenfield v Villager Indus., Inc.,* 483 F2d 824; *Zackiva Communications Corp. v Milberg Weiss Bershad Specthrie & Lerach,* 223 AD2d 417; *Bronx Jewish Boys v Uniglobe, Inc.,* 166 Misc 2d 347; *Matter of Cofino,* 211 AD2d 298.) II. The Appellate Division decision should be reversed because of the public importance of

recognizing shareholders as clients of class counsel in class action litigation. (*Suffolk Roadways v Minuse,* 56 Misc 2d 6; *Greenfield v Villager Indus., Inc.,* 483 F2d 824; *Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn,* 91 NY2d 30; *Matter of Jacqueline F.,* 47 NY2d 215; *Matter of Wong,* 275 AD2d 1; *People v Rohrberg,* 22 AD3d 421; *Matter of Justin EE.,* 153 AD2d 772, 75 NY2d 704; *American Broadcasting Cos. v Wolf,* 76 AD2d 162, 52 NY2d 394.)

*Milberg LLP,* New York City (*Barry A. Weprin* and *Todd L. Kammerman* of counsel), *Stull, Stull & Brody* (*Jules Brody* of counsel), and *Barroway Topaz Kessler Meltzer & Check, LLP,* Radnor, Pennsylvania (*Katharine Ryan* and *John Gross* of counsel), for respondents. I. Absent class members are not true parties to class action litigation and are not "traditional clients" of class counsel. (*Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn,* 91 NY2d 30; *Phillips Petroleum Co. v Shutts,* 472 US 797.) II. Attorney work product is absolutely immune from discovery. (*Spectrum Sys. Intl. Corp. v Chemical Bank,* 78 NY2d 371; *Hickman v Taylor,* 329 US 495; *Upjohn Co. v United States,* 449 US 383; *In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982,* 561 F Supp 1247; *Corcoran v Peat, Marwick, Mitchell & Co.,* 151 AD2d 443; *FTC v Grolier Inc.,* 462 US 19; *Beasock v Dioguardi Enters.,* 117 AD2d 1016.) III. Class counsel's work product is not "property" of absent class members. (*Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn,* 91 NY2d 30; *In re Network Assoc., Inc., Sec. Litig.,* 76 F Supp 2d 1017; *In re Rent-Way Sec. Litig.,* 305 F Supp 2d 491; *Van Gemert v Boeing Co.,* 590 F2d 433; *Tedesco v Mishkin,* 629 F Supp 1474; *Kleiner v First Natl. Bank of Atl.,* 751 F2d 1193; *Fulco v Continental Cablevision, Inc.,* 789 F Supp 45; *Bronx Jewish Boys v Uniglobe, Inc.,* 166 Misc 2d 347; *Matter of Cofino,* 211 AD2d 298; *Franks v Kroger Co.,* 670 F2d 71.) IV. Sam Wyly is not entitled to use the special proceeding to circumvent orderly discovery in the Federal Rules of Civil Procedure rule 60 (b) proceeding. (*Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn,* 91 NY2d 30.) V. Public policy does not mandate a reversal of the Appellate Division decision. (*Phillips Petroleum Co. v Shutts,* 472 US 797.)

**OPINION OF THE COURT**

READ, J.

Petitioner Sam Wyly was an absent class member in a federal securities class action lawsuit; an absent class member is a

member of a putative or certified class who is not a named party (*see Hansberry v Lee,* 311 US 32, 40-41 [1940]). Respondents Milberg Weiss Bershad & Schulman, LLP; Stull, Stull & Brody; and Schiffrin & Barroway, LLP (collectively, the law firms) served as class counsel in the litigation. In this appeal, we are asked whether Wyly—like a represented party in traditional individual litigation—enjoys a presumptive right of access to the law firms' case files upon the representation's termination (*see Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn,* 91 NY2d 30 [1997]). We hold that Wyly does not possess a presumptive right of access, and further conclude that the Appellate Division did not abuse its discretion when it denied Wyly access to the requested records.

## I.

In April 2000, Wyly acquired 971,865 stock options in Computer Associates International, Inc. (CA),[1] a large, publicly traded provider of information technology management software, when he sold his software business to CA. As a result of this transaction, Wyly became a major shareholder in CA.

Between 1998 and 2002, several federal securities class actions were commenced against CA in the United States District Court for the Eastern District of New York. The first 11 lawsuits, brought in 1998, were consolidated into a single class action under the auspices of District Court Judge Thomas C. Platt, who designated Milberg Weiss and Stull, Stull & Brody as co-lead class counsel. Thirteen additional class actions were begun in 2002. These lawsuits were consolidated into another single class action by the same Judge, who designated Milberg Weiss and Schiffrin & Barroway as co-lead counsel. The lawsuits alleged generally that CA and certain of its officers and directors had violated the Securities Exchange Act of 1934 by engaging in questionable accounting practices to improve the appearance of CA's financial performance and condition.

In December 2003, after a fairness hearing (*see* Fed Rules Civ Pro rule 23 [e] [2]), the District Court certified the 1998 and 2002 class actions for purposes of settlement "on behalf of all persons or entities who purchased or transacted in common stock of CA or common stock options during the period January 20, 1998 through and including February 25, 2002 and who sustained damages as a result of such transactions," and ap-

---

1. The company subsequently changed its name to CA, Inc.

proved the proposed settlement. Wyly was a member of the settlement class. Pursuant to the settlement's terms, CA made 5.7 million shares of its common stock available to the settlement class and certain of its officers and directors received broad releases of civil liability. The law firms were awarded 1,443,673 of these shares in fees, and $3,181,486.94 (subject to a cap of 150,000 shares) as reimbursement of expenses. The District Court retained "[e]xclusive jurisdiction . . . over the parties and the Settlement Class Members for all matters relating to the Actions."

On October 18, 2004, P. Kent Correll of Bickel & Brewer, representing Wyly, wrote to Barry A. Weprin of Milberg Weiss, claiming that the class action settlement was "likely procured by fraud upon shareholders, their counsel and the Court." He noted that CA's former general counsel—who pleaded guilty to conspiracy to commit securities fraud and obstruction of justice in September 2004—admitted that he had impeded the government's investigation of CA's accounting practices. Correll also asserted that Weprin had told him on October 4, 2004 "that neither you nor your firm knew" of the existence of 23 boxes of "crucial" CA documents until September 2004, when an article in the Wall Street Journal reported their sudden appearance at the offices of the outside law firm retained by CA's board of directors. Stating that "we believe . . . a motion should be filed with [the District Court Judge] pursuant to Fed.R.Civ.P. 60(b) to relieve plaintiffs from the final judgment approving the settlement," Correll asked Weprin what his position was regarding this proposed action.[2] On November 24, 2004, Weprin informed Correll that the law firms would not move to reopen the judgment of settlement; he also subsequently declined to provide Correl with a requested affidavit.

On December 7, 2004, Bickel & Brewer filed a rule 60 (b) motion in the District Court on behalf of Wyly, Cheryl Wyly and other entities connected with Wyly (collectively, the Wyly movants), who were all members of the settlement class. The Wyly movants sought to vacate the final judgment as to them on the grounds of new evidence, misconduct and fraud upon the court. They also asked for expedited discovery in support of their motion; CA objected to their discovery requests. At the time the

---

**2.** Rule 60 (b) states the grounds on which a district court may relieve a party or its legal representative from a final judgment, order or proceeding, which include newly discovered evidence and fraud.

Wyly movants made their motion, they estimated that they were entitled to roughly 1% of the shares that were about to be distributed to class members to carry out the settlement; these shares, in total, were thought to be worth about $120 million in December 2004.[3]

On January 24, 2005, while the Wyly movants' rule 60 (b) motion was pending, William A. Brewer III of Bickel & Brewer wrote to Melvyn I. Weiss of Milberg Weiss and requested

> "access to and a right to review documents reflective of Class Counsel's pre-trial investigations related to the Class Actions; all the discovery produced or taken in the Class Actions; and all requests for discovery, indices, summaries, or other materials created by Class Counsel in relation to the Class Actions."

Brewer asserted that the Wyly movants were entitled to these documents because the law firms "had an attorney-client relationship with the Wyly Movants, as substantial members of the Settlement Class, at least through the negotiation and execution of the settlement documents, the fairness hearing, and the entry of the final judgments in the Class Actions."

Weprin informed Brewer on January 28, 2005 that the law firms would not respond to his request until the District Court ruled on the "matters currently being briefed, including [the Wyly movants'] application for discovery." In a February 8, 2005 letter to Weprin, Brewer reiterated that he was seeking the documents based on the Wyly movants' attorney-client relationship with Milberg Weiss; therefore, he considered the District Court's prospective ruling on discovery to be "irrelevant."

In a February 28, 2005 letter to Weiss, Brewer again pressed his case, asserting that the law firms' files were needed to counter opposition to the Wyly movants' rule 60 (b) motion and related discovery requests. Specifically, he claimed, the opposing parties were arguing that the law firms had neglected to pursue discovery diligently in the class actions, and that this excused CA's nondisclosure of the 23 boxes "before, during, and after the settlement negotiations."

By that time, the District Court Judge had already referred the discovery issues related to the rule 60 (b) motion to a federal

---

3. Settlement shares were distributed to other class members shortly after the Wyly movants sought rule 60 (b) relief; their shares were placed in the registry of the court pursuant to court order.

magistrate. On June 14, 2005, the Judge ordered the Wyly movants to serve CA with a notice of production making the 23 boxes of documents returnable to the court on July 1, 2005. Wyly acknowledges that, as a consequence of this federal court order, he "obtained some of the materials that he sought from Class Counsel." But he complains that the law firms still "refused to produce the most critical category of documents within [their] Class Action Files: Class Counsel's work product and analysis."

On August 2, 2007, the District Court Judge denied the Wyly movants' rule 60 (b) motions and related discovery requests. In a subsequent order dated September 12, 2007, he reiterated that they had

> "failed to set forth cause to permit further discovery to be conducted in conjunction with their 60 (b) motions. This Court has repeatedly made clear that additional discovery was to be confined to the 'fraud' alleged to be within the '23 boxes.' To date, . . . [the Wyly movants have not] produced any 'new' evidence of fraud upon this Court and consequently, have failed to establish that the contents of the '23 boxes' allegedly withheld during discovery and prior to settlement warranted granting further discovery and the reopening of the 2003 Settlement" (*In re Computer Assoc. Class Action Sec. Litig.*, 2007 WL 2713336, \*3, 2007 US Dist LEXIS 67928, \*12-13 [ED NY 2007]).

The Wyly movants subsequently appealed the Judge's order to the United States Court of Appeals for the Second Circuit.

On April 1, 2005—while the rule 60 (b) motion was pending in the District Court—Wyly commenced this CPLR article 4 special proceeding in Supreme Court.[4] He sought a judgment directing the law firms to "turn over their class action files (or copies thereof)," including "all e-mails, attorneys' notes, internal memoranda, document requests, indices, privilege logs, drafts and research related to [the law firms'] representation of

---

4. In late 2007, Wyly also commenced a malpractice action against the law firms in Supreme Court. Invoking the All Writs Act, the law firms applied to the District Court for an injunction barring Wyly from pursuing this action; the parties ultimately agreed to stay the malpractice action pending the Second Circuit's determination of the Wyly movants' appeal of the District Court's August 2007 order denying their rule 60 (b) motion. The Second Circuit heard this appeal in March 2009.

[Wyly] and other class members in their prosecution of the Class Actions." Wyly contended that, as a member of the settlement class, he "enjoy[ed] all privileges and rights pursuant to the attorney-client relationship between [the law firms] and Settlement Class members." Thus, the law firms were, Wyly argued, "obligated to . . . provide [him] with access to all documents, discovery materials, and attorney work product that was received, created, or maintained for the benefit of the entire Settlement Class." In answer to Wyly's petition, the law firms asserted that his claims were barred by the attorney work-product privilege.

Both parties recognized that the outcome of Wyly's petition would likely turn on the lower court's understanding and application of our decision in *Sage Realty*. There, we joined the "majority of courts and State legal ethics advisory bodies," which take the position that "upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding," a client is "presumptively accord[ed] . . . full access to the entire attorney's file on a represented matter with narrow exceptions" (*Sage Realty*, 91 NY2d at 34).

The petitioners in *Sage Realty* retained Proskauer to represent them in a multi-million-dollar mortgage financing and a restructuring of ownership interests, all involving New York City properties. After a falling out with Proskauer, the petitioners retained a different firm to represent them in the transaction. Proskauer refused to turn over certain documents relating to its representation of the petitioners, prompting them to commence a special proceeding to recover the documents.

"Barring a substantial showing by [former counsel] of good cause to refuse client access," we stated, a client "should be entitled to inspect and copy work product materials, for the creation of which they paid during the course of the firm's representation" (*id.* at 37). We observed that, especially in complex transactions, the "client's need for access to a particular paper cannot be demonstrated except in the most general terms, in the absence of prior disclosure of the content of the very document to which access is sought" (*id.* at 36). By contrast, "[t]he attorney in possession of the contents of the file is in a far better position to demonstrate that a particular document would furnish no useful purpose in serving the client's present needs for legal advice" (*id.*).

In February 2007—prior to the District Court's resolution of the Wyly movants' rule 60 (b) motion—Supreme Court granted

Wyly's petition and ordered the law firms "to turn over their files in the consolidated class actions" to him within 45 days (later amended to 75 days) of the court's order (*Wyly v Milberg Weiss Bershad & Schulman, LLP*, 15 Misc 3d 583, 592 [Sup Ct, NY County 2007]). The court specifically directed the law firms to make available "the withheld documents containing work product, except for those documents for which they provide a privilege log in compliance with CPLR 3122 (b)" (*id.* at 592-593).

In Supreme Court's view, Wyly's "relationship with [the law firms was] *sufficiently similar* to a traditional attorney-client relationship so as to create a presumption in favor of affording him access to [the law firms'] files in accordance with *Sage Realty*" (*id.* at 590 [emphasis added]). The court noted that, as a member of the settlement class, Wyly was "bound by the judgment obtained as a result of the settlement unless he obtain[ed] relief via his rule 60 (b) motion," and the law firms' files were "not only potentially relevant to that motion but also could provide a basis for a legal malpractice action against [them]" (*id.* at 590-591). Thus, Wyly had demonstrated "both a legitimate need and a legal basis . . . for obtaining the documents at issue" (*id.* at 591).

On the law firms' subsequent appeal, the Appellate Division reversed Supreme Court. *Sage Realty* was distinguishable, the court reasoned, because it "involved an attorney-client relationship in the traditional sense, in that the single voice of a client governs, among other things, the lawyer's conduct; the direction of a case, including any decision on when, if, and under what terms it should be settled; and the attorney's continued employment," which "differs fundamentally" from the relationship between class counsel and an absent class member (*Wyly v Milberg Weiss Bershad & Schulman, LLP*, 49 AD3d 85, 90 [1st Dept 2007]).

The Appellate Division acknowledged that absent class members are "entitled to some of the benefits of the attorney-client relationship, such as the right to privileged communications with class counsel and the prohibition against attempts by defendants' counsel to communicate with [them]" (*id.* at 91-92), but may not "direct the course of the litigation, testify at trial, participate in discovery, or dismiss class counsel" (*id.* at 92). The court further noted that class members could hire their own counsel if they "wish[ ] to employ a traditional attorney-client relationship, although [their] input into the litigation

would . . . [be] curtailed," or could even "opt out of the class action altogether" (*id.*). The Appellate Division therefore "reject[ed] a blanket extension of *Sage Realty*'s presumptive-entitlement right to absent class members, and f[ound] that the better practice [was] to require absent class members to establish their entitlement to class counsel's file on a case-by-case basis" (*id.*).

The Appellate Division then concluded that, in light of the facts in this case, Wyly had not established his entitlement to the law firms' files; indeed, he was

> "granted access, by the District Court, to the vast majority of the material in [the law firms'] files, including discovery materials, as well as the mysterious 23 boxes previously withheld by CA. [Wyly], armed with those volumes of documents, still offers nothing, other than mere speculation, that the work product he seeks will convince the District Court, or the United States Court of Appeals for the Second Circuit, that his rule 60 (b) motion should have been granted, and we decline to countenance [Wyly's] use of this article 4 proceeding as a vehicle to launch a fishing expedition. Moreover, as already noted, [the District Court Judge], in his . . . orders denying [Wyly's] rule 60 (b) motion, made it very clear that [his] moving papers failed to set forth cause to permit further discovery" (*id.* [internal quotation marks omitted]).

We granted Wyly's motion for permission to appeal (11 NY3d 704 [2008]) and now affirm.

## II.

A class action is an exception to the rule "that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process" (*Hansberry*, 311 US at 40). The class action "was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable" (*id.* at 41). The absent individuals "would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest" (*Phillips Petroleum Co. v Shutts*, 472 US 797, 808 [1985]).

Modern class actions serve several important purposes, as explained by the United States Supreme Court in *Phillips Petroleum*: they "permit[ ] litigation of a suit involving common questions when there are too many plaintiffs for proper joinder" and "also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually" (*id.* at 809). The statutes governing class actions are designed to achieve these goals while ensuring "proper representation of the absent plaintiffs' interest" (*id.*).

The Court further elaborated on the unique status of absent class-action plaintiffs as follows:

"They need not hire counsel or appear. They are almost never subject to counterclaims or crossclaims, or liability for fees or costs. Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages, although a valid adverse judgment may extinguish any of the plaintiff's claims which were litigated. . . .

"[A]n absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. In most class actions an absent plaintiff is provided at least with an opportunity to 'opt out' of the class, and if he takes advantage of that opportunity he is removed from the litigation entirely" (*id.* at 810-811).

In short, "[a]bsent class members occupy a special, nontraditional status in litigation" (1 Newberg on Class Actions § 1:3, at 19 [4th ed]). As Restatement (Third) of the Law Governing Lawyers § 14, Comment *f* (2000) explains,

"[c]lass actions may pose difficult questions of client identification. For many purposes, the named class representatives are the clients of the lawyer for the class . . . Yet class members who are not named representatives also have some characteristics of clients. For example, their confidential communications directly to the class lawyer may be privileged . . . , and opposing counsel may not be free to communicate with them directly . . .

"Lawyers in class actions must sometimes deal with

disagreements within the class and breaches by the named parties of their duty to represent class members. Although class representatives must be approved by the court, they are often initially self-selected, selected by their lawyer, or even (when a plaintiff sues a class of defendants) selected by their adversary. Members of the class often lack the incentive or knowledge to monitor the performance of the class representatives. Although members may sometimes opt out of the class, they may have no practical alternative other than remaining in the class if they wish to enforce their rights. Lawyers in class actions thus have duties to the class as well as to the class representatives.

"A class-action lawyer may therefore be privileged or obliged to oppose the views of the class representatives after having consulted with them. The lawyer may also propose that opposing positions within the class be separately represented, that subclasses be created, or that other measures be taken to ensure broader class participation. Withdrawal may be an option . . . , but one that is often undesirable because it may leave the class without effective representation. The lawyer should act for the benefit of the class as its members would reasonably define that benefit."

The United States Court of Appeals for the Third Circuit made similar observations in its 2002 Task Force Report on Selection of Class Counsel:

"In class actions, the ordinary assumptions about the attorney-client relationship do not apply. . . .

"Counsel for a class is in a unique position. Absent class members are not individual clients. Thus, the ordinary attorney-client relationship does not exist between each class member and class counsel. Yet, there clearly is a duty imposed upon class counsel—by the rules of professional conduct and by Fed. R. Civ. P. 23—to protect the entire class fairly and adequately and to work diligently to maximize class recovery" (208 FRD 340, 346-348 [Jan. 15, 2002]).

In *Van Gemert v Boeing Co.* (590 F2d 433, 440 n 15 [2d Cir 1978], *affd* 444 US 472 [1980]), the Second Circuit rejected the "argument that there is no attorney-client relationship between

the absentees and class counsel." The court stated that "[a] certification under Rule 23 (c) makes the Class the attorney's client for all practical purposes . . . The judgment in a class action is not secure from collateral attack unless the absentees were adequately and vigorously represented" (*id.*, citing *Developments in the Law—Class Action*, 89 Harv L Rev 1321, 1592-1597 [1976]; *Gonzales v Cassidy*, 474 F2d 67, 75-76 [5th Cir 1973]). Similarly, in *Greenfield v Villager Indus., Inc.* (483 F2d 824, 832 [3d Cir 1973]), the Third Circuit emphasized that

> "[r]esponsibility for compliance [with the procedural rules governing class actions] is placed primarily upon the active participants in the lawsuit, especially upon counsel for the class, for, in addition to the normal obligations of an officer of the court, and as counsel to parties to the litigation, *class action counsel possess, in a very real sense, fiduciary obligations to those not before the court*" (emphasis added).

■ Thus, two general propositions emerge from the case law: "class counsel do not possess a traditional attorney-client relationship with absent class members" (*In re Community Bank of N. Va.*, 418 F3d 277, 313 [3d Cir 2005]), and they represent the interests of and owe a fiduciary duty to the entire class (*see Daniels v City of New York*, 199 FRD 513, 515 [SD NY 2001]; *In re Shell Oil Refinery*, 152 FRD 526, 528 [ED La 1989]). In sum, while absent class members are clients of class counsel, they are a unique species of client.

In our view, the class counsel-absent class member relationship is simply too unlike the traditional attorney-client relationship to support extending the *Sage Realty* presumption to absent class members. We justified the *Sage Realty* presumption in part because it "more closely conform[ed] to the position taken by the courts of this State on the client's broad rights to the contents of the file" when the attorney is dismissed on a matter still pending (*Sage Realty*, 91 NY2d at 36). In a class action, however, an absent class member does not possess a "broad right[ ]" of access to the files of a class counsel dismissed by the trial court during the litigation's pendency. Further, a class action by its very nature may involve thousands of absent parties who are geographically dispersed. As a consequence, to endorse the *Sage Realty* presumption in this context would create "the potential for class counsel to be unduly burdened, even after the end of litigation, by a multitude of requests from absent class members for counsel's entire file" (*Wyly*, 49 AD3d at 92).

We are especially mindful of the paramount role the trial court plays in managing a class action and protecting the rights of absent class members (see Greenfield, 483 F2d at 832 ["(U)ltimate responsibility of course is committed to the district court in whom, as the guardian of the rights of the absentees, is vested broad administrative, as well as adjudicative, power"]). Indeed, in appointing class counsel in the first instance, a federal court must take into account numerous factors bearing on the adequacy of the prospective representation (see Fed Rules Civ Pro rule 23 [g]). This unusually high degree of judicial involvement and responsibility is another distinctive feature of a class action which sets it apart from traditional litigation. It both diminishes an absent class member's need for access to class counsel's files, and provides an alternative avenue to obtain them.

We therefore conclude that where an absent class member brings a CPLR article 4 special proceeding seeking access to class counsel's litigation files after termination of the representation, Supreme Court must first consider how much the absent class member has at stake. If (as the parties do not dispute here) the absent class member has a substantial financial interest in the class action's outcome, the court must then decide whether the absent class member has demonstrated a legitimate need for the requested documents.

In this case, the Appellate Division decided that Wyly had not made an adequate showing to compel the law firms to produce their files; in particular, the law firms' work product and analysis relating to the class actions. Wyly sought these documents to support the Wyly movants' rule 60 (b) motion and his malpractice action against the law firms, allegedly for settling the class actions too cheaply. As the Appellate Division observed, however, the District Court long ago granted Wyly access to the 23 boxes that apparently triggered his suspicions of fraud in the first place. When Wyly was unable to convince the District Court that anything in the 23 boxes, in fact, suggested fraud, the Judge declined to order further discovery or to reopen the 2003 settlement. The District Court, which supervised the class actions and has retained jurisdiction, is responsible for protecting the interests of absent class members, which includes monitoring the adequacy of class counsel's performance. We cannot say that the Appellate Division abused its discretion by, in effect, declining to second-guess the District Court's judgments.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

SMITH, J. (dissenting). I would hold that Wyly is entitled, as was the client in *Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn* (91 NY2d 30 [1997]), to review the work product he has paid a significant sum for.

I acknowledge that not every class member in a case like this has a *Sage Realty* right to review counsel's file. The vast majority of class members have only a nominal interest in the case, and their contributions to the lawyers' fees are accordingly minuscule. To allow all of them access to lawyers' work product would be impractical, and would invite abuse. But here, class counsel received a fee consisting of CA stock worth approximately $40 million. Wyly had acquired 971,865 CA options; his counsel estimated at oral argument that Wyly's interest represented 1% of the class. It is thus inferable that class counsel got for its efforts $400,000 of Wyly's money.

It is true that the relationship between class counsel and class members differs from the classic attorney-client relationship at issue in *Sage Realty*. Wyly, unlike Sage Realty Corporation, had no right to select the lawyers who represented him, to accept or veto a settlement or to negotiate the amount of the lawyers' fees; he had only a right to make his views on those issues known to the court, which had the power to decide them. But I do not see why those differences should destroy Wyly's *Sage Realty* rights; if anything, they are a reason to give Wyly greater protection.

A recurrent danger in class action practice—a danger all too often realized—is that the lawyers' interests and those of the class members will not be well aligned. Affording a *Sage Realty* right to a class member who has paid more than a de minimis amount of the lawyers' fees could help to overcome that problem. It would be a good thing, I think, if the lawyers for a class were always aware that class members with weighty interests were entitled to scrutinize their work.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur with Judge READ; Judge SMITH dissents in a separate opinion; Chief Judge LIPPMAN taking no part.

Order affirmed, with costs.