Matter of Silvar v Commissioner of Labor of the State of N.Y. (2019 NY Slip Op 05841)





Matter of Silvar v Commissioner of Labor of the State of N.Y.


2019 NY Slip Op 05841


Decided on July 30, 2019


Appellate Division, First Department


Oing, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 30, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Barbara R. Kapnick
Troy K. Webber
Jeffrey K. Oing
Anil C. Singh,JJ.


153898/17 8544 

[*1]In re Kevin J. Silvar, et al., Petitioners,
v
The Commissioner of Labor of the State of New York, et al., Respondents.



Petitioners seek to annul the determination of respondent Industrial Board of Appeals, dated March 1, 2017, which, after a hearing, affirmed respondent Commissioner of Labor's Order to Comply, dated June 17, 2014, directing petitioners to pay certain unpaid wages, interest, liquidated damages, and civil penalties to two of their former employees.




Nixon Peabody LLP, Jericho (Jeffery A. Meyer and David A. Tauster of counsel), for petitioners.
Barbara D. Underwood, Attorney General, New York (ReNika C. Moore, Donya Fernandez, Julie Ulmet and Seth Kupferberg of counsel), for respondents.



OING, J.


The issue in this proceeding is the extent of the binding effect of a federal district court's release, in a class action, of New York State Labor Law wage claims and related civil penalties on respondents, the Commissioner of Labor of the State of New York (Commissioner) and the Industrial Board of Appeals of the State of New York (IBA).
Petitioner corporation, VisionPro Communications Corp., and its owners, petitioners Kevin J. Silvar and Joseph P. Romano, commenced this article 78 proceeding seeking to annul IBA's determination that affirmed the Commissioner's three Orders to Comply, dated June 17, 2014. Those orders directed petitioners to pay in the aggregate $28,761.87 to satisfy two former [*2]employees' State wage claims, inclusive of civil penalties. Supreme Court transferred the proceeding to this Court for disposition because resolution of the disputed issues ostensibly involves a substantial evidence review (CPLR 7804[g]).
VisionPro provides sales, service, and cable installation services to consumers of regional cable television companies such as Cablevision, Comcast, and Time Warner. On August 6, 2010, Damion Stewart and Shurwin Thompson, technicians employed by VisionPro to, among other duties, install cable, video, and data lines, commenced a class action on behalf of themselves and similarly situated individuals against VisionPro, Silvar, and Cablevision Systems Corporation [FN1] in the United States District Court for the Eastern District of New York (the District Court) (Stewart v VisionPro Communications Corp., No. 10-cv-3688 ED NY [Stewart]). Plaintiffs asserted claims under the State's Labor Law for failure to pay minimum wages, failure to pay overtime wages, and unlawful deductions. The class action included VisionPro employees who were technicians, or held comparable positions from August 6, 2004 through June 13, 2011, the date of the District Court's preliminary approval order. There is no dispute as to the composition of the class.
On June 3, 2011, the parties entered into a Joint Stipulation of Class Settlement and Release (settlement).
The settlement defined "Settling Parties" to mean defendants (petitioners herein), opt-in plaintiffs, and class representatives on behalf of themselves and all participating class members. Under the terms of the settlement, a class member is required to submit a timely "Election Not to Participate in Settlement" form (opt-out); otherwise the individual will be deemed to be a participating class member, who will be bound by the settlement, including the release of all State wage claims. As is relevant to this proceeding, the settlement provides that class representatives, on behalf of themselves and all participating class members, and other bound individuals, will be releasing all wage-related New York Labor Law claims against petitioners accruing on or before the date of the final approval order entered by the District Court.
On June 13, 2011, the District Court issued an order granting preliminary approval of the settlement, which included approval of the "Class Notice." The Class Notice informed class members that they could: (1) participate in the settlement; (2) object to the settlement; or (3) opt-out of the settlement. It also provided that "[i]f you do nothing in response to this Notice, you will not be eligible to receive any proceeds under the Settlement, but you will be deemed to have released all of the Released State Law Claims." The Class Notice specifically directed all class members to respond by September 20, 2011.
After the preliminary approval, the parties retained Simpluris, Inc., the settlement administrator, to effectuate dissemination of the Class Notice and to monitor and record the responses. The original list of putative class members petitioners provided to Simpluris contained 710 names. After accounting for duplicates, an individual who was employed outside the class period, and an employee who was unintentionally excluded, the final list contained 708 names.
On October 6, 2011, based on Simpluris's application indicating compliance with the Class Notice procedures, the District Court issued a final order that (1) confirmed the certification of the class and collective action, (2) granted final approval of the class action settlement, and (3) entered final judgment. The District Court found that the notice methodology employed by Simpluris "constituted the best notice practicable under the circumstances to all [*3]persons within the definition of the Settlement Class," and "fully met the requirements of due process under the United States Constitution and applicable state law." Critically, the District Court found the actual notice to the settlement class was "adequate." Except as to those class members who validly and timely opted-out, the District Court held that the settlement class's wage claims asserted in the class action are dismissed with prejudice. The District Court entered judgment declaring that the settlement class released all wage-related New York Labor Law claims against petitioners arising on or before October 6, 2011, the date of the final approval order (Stewart release). The District Court dismissed the class action with prejudice, and, more importantly, retained exclusive and continuing jurisdiction of the class action, the parties, and the settlement class "for the purposes of supervising the implementation, effectuation, enforcement, construction, administration and interpretation of the Settlement Agreement and this Judgment."
Notwithstanding the Stewart release, Kemoy Wright and Xavier Talbot, who were petitioners' employees during the relevant time period and undisputedly class members, filed separate State minimum wage/overtime complaints (State wage claims) with respondents, one on January 11, 2010, before the class action was commenced, and the other on January 31, 2012, after the opt-in period had expired, respectively.
After conducting an investigation, the State Department of Labor (DOL) investigator issued letters to petitioners on August 7, 2013 requiring them to make payment in the amount of $11,022.25 for Talbot's State wage claims, and on August 27, 2013, requiring them to make payment in the amount of $2,407 for Wright's State wage claims. The DOL letters relied on the State's Labor Law to find in claimants' favor. Because petitioners failed to make payments, the Commissioner issued the orders, dated June 17, 2014, requiring petitioners to make the following payments, which now included interest and penalties, on behalf of claimants: $8,263.13 for the State wage claims, and an additional $5,178.90 in interest at 16%, $2,066.12 in liquidated damages, and $8,263.13 as a 100% civil penalty for the State wage claims; $2,990.59 for unlawful deduction claims, including 16% interest, 25% liquidated damages, and a 100% civil penalty (the State wage claim and unlawful deduction claim collectively referred to as the dual wage claims); and $2,000 in civil penalties for failing to keep accurate payroll records and failing to provide wage statements (penalty claims). Thereafter, petitioners filed with IBA a petition for review of these orders.
Before IBA, petitioners argued that the Stewart release barred claimants from pursuing their dual wage claims, and, that even without the release, claimants and respondents are barred by the res judicata effect of the final approval order in the class action. The sole issue entertained by IBA was whether the claimants received the class notice. Appearing before IBA were Eric Springer, a case manager with Simpluris, and Talbot. Although Wright did not testify, Simpluris's records showed it rejected Wright's claim as untimely. Thereafter, IBA issued a Resolution of Decision, dated March 1, 2017, that affirmed the Commissioner's orders.
We now modify the IBA's determination to find that the Stewart release incorporated in the District Court's final approval order bars Talbot, Wright, and respondents from pursuing Talbot's and Wright's dual wage claims. We, however, confirm IBA's penalty assessment for the non-wage penalty claims. For the reasons that follow, our analysis does not require review under the substantial evidence standard, but, instead, involves a question of law (CPLR 7804[g]).
IBA recognized that there is no dispute that the Stewart release is legally enforceable, and that claimants' dual wage claims before DOL are identical to the ones at issue in the release. Significantly, IBA also recognized that
"[c]laim preclusion bars successive litigation based upon the same transaction or series of connected transactions' if there is a judgment on the merits rendered by a court of competent jurisdiction, and the party against whom the doctrine is invoked [*4]was a party to the previous action, or in privity' with a party who was ...."
Thus, focusing on the concept of privity, IBA framed the issue as one concerning the adequacy of the class notice methodology. Based on the evidence proffered at the hearing, IBA rejected petitioners' argument that Talbot's and Wright's dual wage claims were released under the Stewart release because IBA found that the evidence demonstrated that the procedures for class notice were not adequate. In that regard, IBA determined that petitioners "failed to meet their burden of showing with reliable and credible evidence that [they] acted with reasonable diligence to send timely individual notice to claimants Talbot and Wright." Accordingly, IBA found that "[Talbot and Wright] were not adequately represented by or in privity with the Stewart class," and that "the final resolution of the Stewart matter does not preclude them from pursuing their claims apart from the Stewart litigation."
Procedurally, IBA erred in entertaining this issue. In the final approval order, the District Court clearly and unmistakably retained exclusive and continuing subject matter jurisdiction of the Stewart class action "for the purposes of supervising the implementation, effectuation, enforcement, construction, administration and interpretation of the Settlement Agreement and this Judgment." Undoubtedly, the District Court "has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction" (In re American Express Fin. Advisors Sec. Litig., 672 F3d 113, 134 [2d Cir 2011], quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F 3d 355, 367-368 [3d Cir 2001]; Fotheringham v Riversource Life Ins. Co. of N.Y., 148 AD3d 1519, 1521 [4th Dept 2017], appeal dismissed 29 NY3d 1019, lv denied, 29 NY3d 918 [2017]). Indeed, nowhere in IBA's decision does it proffer any legal basis as to why it should disregard the District Court's mandate of exclusive and continuing jurisdiction over the Stewart class action. The consequence is two inconsistent rulings on an issue within the District Court's exclusive and continuing jurisdiction, an inconsistency that was avoidable. The proper course to challenge the District Court's findings of adequacy of the class notice would have been by direct appeal (see e.g. Matter of Vidurek v New York Supreme Ct., Albany County, 108 AD3d 896, 897 [3d Dept 2013]; Matter of Raysor v Stern, 68 AD2d 786, 788 [4th Dept 1979], lv denied 48 NY2d 605 [1979], cert denied 446 US 942 [1980]). That said, the bedrock of our jurisprudence is grounded in a simple, unassailable, legal principle  where a court has jurisdiction of the parties and the subject matter in a particular case, its judgment, unless reversed or annulled in a proper proceeding, is not open to attack or impeachment by parties or privies in any collateral action or proceeding. Under these circumstances, we find that the District Court is the sole forum to resolve the question of adequacy of the class notice, and IBA committed clear error by entertaining this discrete issue in a collateral proceeding (see Wyly v Milberg Weiss Bershad & Schulman, LLP, 12 NY3d 400, 413 [2009] [declining to second guess federal court's judgments not an abuse of discretion given it supervised the class actions and retained jurisdiction to protect the interests of absent class members]; Fotheringham, 148 AD3d at 1521).
Even if IBA were not procedurally barred, it had no legal basis to find that the methodology undertaken to disseminate the class notice was not adequate. That finding is in direct conflict with the District Court's determination that such notice methodology "constituted the best notice practicable under the circumstances to all persons within the definition of the Settlement Class," "fully met the requirements of due process under the United States Constitution and applicable state law," and, significantly, was "adequate." Clearly, the District Court in arriving at its determination understood and considered the notion that "[i]ndividual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice" (Williams v Marvin Windows & Doors, 15 AD3d 393, 395-396 [2d [*5]Dept 2005], quoting Reppert v Marvin Lumber & Cedar Co., Inc., 359 F3d 53, 56 [1st Cir 2004]), and recognized in making this determination that the "method of notice ordered [had to be] reasonably calculated to reach [class members], and diligent efforts [had to be] made to comply with the prescribed method [of notice]" (Williams, 15 AD3d at 396; see also Gonzalez v City of New York, 396 F Supp 2d 411, 417 [SD NY 2005] ["actual notice (of the class settlement) is not required for individuals to be deemed members of a class certified under (Federal) Rule 23(b)(3) if proper notification procedures were followed"]). Rather, the "adequacy of notice to the class as a whole determines the binding effect of a class settlement on an individual class member" (id. at 418 [internal quotation marks omitted]). The IBA fails to set forth in its analysis any legal basis to challenge the District Court's determination that the class notice was adequate. Absent any such basis to support this starkly different result, IBA's finding of inadequacy has no legal footing and cannot stand.
Accordingly, we annul the IBA's finding that privity did not exist with respect to these claimants because the class notice was not adequate. As such, Talbot and Wright are bound by the Stewart release, and their dual wage claims have been released.
The question that remains is whether as a result of the Stewart release respondents are barred from pursuing the released dual wage claims on claimants' behalf. In its decision, IBA held that "[b]ecause we find . . . that claim preclusion does not bar claimants from pursuing their claims under the Labor Law, we need not address whether the Commissioner, who was not a party to the Stewart litigation, is precluded under the terms of Applied Card Systems, Inc. (11 NY3d 105), from, consistent with her statutory duty, pursuing claims on behalf of claimants Talbot and Wright." Although the IBA did not address this issue, respondents urge that even if claimants are barred from pursuing their dual wage claims before DOL, the Commissioner may still pursue these claims on their behalf against petitioners. Stated differently, does the doctrine of res judicata or claim preclusion bar respondents' efforts on Talbot's and Wright's behalf? Although IBA did not address this issue in its decision, we undertake to resolve it because its resolution is a question of law (see Brown v Sears Roebuck & Co., 297 AD2d 205, 210 [1st Dept 2002] [where there is no real dispute as to the facts or the proper inferences to be drawn from such facts the issue is a question of law to be decided by the court]).
Res judicata or claim preclusion precludes successive litigation based on the same transaction or series of connected transactions if there is a valid and enforceable judgment and the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party (Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 122 [2008], cert denied 555 US 1136 [2009]). Further, res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation" (Matter of Hunter, 4 NY3d 260, 269 [2005]). Because we have determined that claimants have released their dual wage claims, the focus now necessarily concerns the concept of privity, and whether it exists between claimants and respondents. We find that the holding in Applied Card Sys., Inc. (11 NY3d at 124) is dispositive of this issue.
The Applied Card Court addressed whether the state Attorney General was precluded under the doctrine of res judicata from pursuing on the class members' behalf their restitution claims released in an underlying class action settlement. The Court held that because the Attorney General was pursuing claims identical to the ones that had been released that fact alone established privity (id. at 124). The facts herein are virtually indistinguishable from Applied Card. Here, respondents, on behalf of claimants, seek to pursue their released dual wage claims. As such, privity has been established between claimants and respondents.
Respondents, however, argue that privity must yield to public policy, namely, that pursuit of the dual wage claims has less to do with pecuniary interests, and more to do with deterring wage violations under the Labor Law. Again, Applied Card is dispositive. There, the Attorney [*6]General argued that privity should yield to the greater good:
"[The Attorney General's] interest in seeking restitution on those consumers' behalf is far broader than their individual pecuniary concerns. Rather, he seeks restitution as a means of deterring future fraud, deception, and false advertising and restoring the public's trust in the consumer credit marketplace."
(id. at 122-123). In urging the Court to accept his argument, the Attorney General also noted that
"his interest in protecting the public was not represented at all in the [class action] case. Indeed, he points out that he was not provided with notice of the settlement or an opportunity to object to it"
(id. at 124). The Court rejected the Attorney General's public policy plea and lack of representation argument, and reaffirmed its commitment to its "traditional solicitude" towards class action settlement agreements. In so doing, the Court restated the core principle of res judicata, "a party's right to rely upon the finality of the results of previous litigation" (id. at 124).
Accordingly, we hold that the doctrine of res judicata bars respondents from pursuing on claimants' behalf their released dual wage claims.
Respondents argue that even if they are precluded from pursuing these claims they may still pursue civil penalties against petitioners based on these claims. In making this argument, respondents rely on Applied Card. Their reliance is misplaced. In Applied Card, the Attorney General commenced an action to, among other things, recover civil penalties under General Business Law § 350-d "for each' violation of § 349 and § 350, which shall accrue to the state of New York'" (Matter of People v Applied Card Sys. Inc., 2006 NY Misc LEXIS 9527, *23 [Sup Ct, Albany County 2006]). Here, unlike Applied Card, respondents are not asserting General Business Law claims, but only put forth Labor Law § 218 as the basis for the Commissioner's authority to recover penalties for violation of the Labor Law. As for the wage-related penalties, section 218 provides:
"In addition to directing payment of wages, benefits or wage supplements found to be due, and liquidated damages in the amount of one hundred percent of unpaid wages, such order, if issued to an employer who previously has been found in violation of those provisions, rules or regulations, or to an employer whose violation is willful or egregious, shall direct payment to the commissioner of an additional sum as a civil penalty in an amount not to exceed double the total amount of wages, benefits, or wage supplements found to be due."
Thus, any penalty related to a wage claim must be based on, and in addition to, an order directing payment on such claim. We have determined that respondents are precluded from pursuing claimants' dual wage claims on their behalf. As such, without a viable wage claim, respondents cannot seek to impose on petitioners civil penalties based on section 218.
Respondents, however, are not precluded from recovering $2,000 civil penalties based on violations of Labor Law § 661, which permits assessment for failure to keep accurate payroll records or furnish wage statements. These violations are not related to claimants' released dual wage claims, and Labor Law § 661 does not require a viable wage claim to support imposition of such civil penalties (see e.g. Wyly v Milberg Weiss Bershad & Schulman, LLP, 12 NY3d at 408 [permissible to pursue claims not released in class action in another forum]).
Accordingly, the determination of respondent Industrial Board of Appeals, dated March 1, 2017, which, after a hearing, affirmed respondent Commissioner of Labor's Order to Comply, dated June 17, 2014, directing petitioners to pay certain unpaid wages, interest, liquidated damages, and civil penalties to two of their former employees should be modified, on the law, to deny the Order to Comply insofar as it directed petitioners to pay the unpaid wages, interest and liquidated damages, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Shlomo Hagler, J.], entered September 11, 2017), otherwise disposed of by confirming the remainder of the determination challenged, without costs.
All concur.
Determination of respondent Industrial Board of Appeals, dated March 1, 2017, modified, on the law, to deny the Order to Comply insofar as it directed petitioners to pay the unpaid wages, interest and liquidated damages, and the proceeding
brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Shlomo Hagler, J.], entered September 11, 2017), otherwise disposed of by confirming the remainder of the determination challenged, without costs.
Opinion by Oing, J. All concur.
Friedman, J.P., Kapnick, Webber, Oing, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 30, 2019
CLERK



Footnotes

Footnote 1:Although named as a defendant, Cablevision Systems Corporation is no longer a party to the class action. Also, it is not a party in the article 78 proceeding.