HARRIS, J.
Orange County appeals the summary judgment entered in favor of BellSouth Telecommunications, Inc. (BellSouth) which held invalid certain tax assessments on the amount charged for “telecommunication service” (access fee) within the county. After an audit was conducted by the Florida Public Service Commission (Commission) of BellSouth’s earnings, it was determined that BellSouth received excess profit during the audit period. Pursuant to its authority, the Commission, *476 in order to offset the excess profit, ordered BellSouth to refund the excess profit to its subscribers during the upcoming months of June, 1997, and June and December, 1998, “based on access lines, pro rata according to rate level.” Pursuant to this order, BellSouth discounted the monthly service fee during the appropriate months by the amount necessary to offset the previously received excess profit. It charged and collected taxes only on the discounted monthly fee. Orange County takes the position that taxes should have been assessed on the amount of the service charge before the discount was figured. We affirm the trial court’s summary judgment.
The resolution of the issue in this case is not as difficult as it appears. Simply stated, the issue is whether the telephone subscriber must continue to pay Orange County’s tax on the charge for access to local telephone service on the basis of the initial regulated rate even after the subscriber’s current monthly access fee has been reduced from the regulated rate to compensate for the excess profit earned by the local server (BellSouth in this case) during the preceding audit period.
The resolution of this issue requires less of a detailed analysis of the tax code than a recognition of what the Florida Public Service Commission (the Commission) was authorized to do, what it ordered, and what BellSouth did in compliance. The Commission can and does regulate the rate charged by BellSouth for subscriber access to its service and this access charge is taxable by the County. Further, the Commission can control the amount of total profit made by BellSouth during an audit period and may require a refund if the profit is determined to be excessive. The Commission cannot and does not regulate the charge for advertising, the charge for repairs, the charge for call waiting, etc., etc., etc.
Thus, in effect, the rate first established and thereafter collected as the charge for access to BellSouth’s service is conditionally approved by the Commission and may be adjusted after audit if too much profit occurs.[1] In this case, the Commission initially approved an access charge in an amount which was anticipated, along with the income from BellSouth’s other services, to provide a reasonable profit to justify the investment made by the telephone server. However, it was subsequently determined that the access fee (all of which has been taxed by Orange County ) had been set too high and an excessive profit was earned by BellSouth.
The Commission then ordered that the current regulated rate be reduced for a three-month period in an amount necessary to offset the excess income earned during the preceding audit period. This refund of excess profit is akin to a situation in which a shoe salesman inadvertently charges a customer $10 for a $5 pair of shoes. The customer, after being advised of the mistake, elects to purchase a new $10 pair of shoes for $5 instead of receiving a cash refund of $5 (together with the associated tax) from his initial overcharge. At the end of the day, the customer had purchased $15 worth of shoes and had paid tax on $15 worth of purchases. A greater tax would be illegal. In this case, the Commission, by ordering a reduction of the current year’s regulated rate to offset the previously collected excess profit, effectively reduced the price for the second pair of shoes and Orange County has therefore collected all of the taxes to which it is entitled.
*477 But the County insists it is not that easy. It urges that since the income earned by BellSouth from all of its income sources during the audit period was merged, we cannot tell which actual dollars, taxed or untaxed, are now being restored to the subscribers. This argument assumes that income from the various profit sources is like the water from three streams which flow together to form a river making it impossible to tell which drop of water came from which stream. But while the dollars in the bank may look the same, the amount of income derived from each source is readily determinable. And there is no requirement that the excess profit must be returned to the subscriber or to the advertiser or to the one who had repairs performed, etc., in proportion to the individual income components which contributed to the total profit which was deemed excessive[2]. If there were such a requirement, then the excess profits assigned to advertising income would have to be returned only to advertisers; excess repair income would have to be returned only to those who required repairs during the audit period. BellSouth, consistent with the Commission’s order, treated the entire excess as having come from the income produced from its access fee, a source readily identifiable and the only fee charged uniformly to its subscribers. This was the most reasonable, and the fairest, way to treat the excess profit and the resulting impact on the County’s tax base was both coincidental and legal.
The fact that the previous period’s income was merged is totally irrelevant. The return of excess profit is not being made from previous income; it is being made from reducing the current charge for access to BellSouth’s service. And, under the law, this return of excess access service revenue previously collected may be made in two ways. BellSouth can simply reduce the charge of its current access charge by an amount that will exhaust the excess profit and thus automatically reduce the amount subject to the County tax or, if the subscriber chooses, BellSouth can collect its normal monthly charge and immediately refund the appropriate portion of it to the subscriber in cash. Since this would be a reduction (a refund) from the current charge for services, taxes would be due only on the resulting actual charge for services.[3]
*478 Orange County has no control over the amount the Commission permits BellSouth to charge for access to its service. It can only levy its tax against the amount actually charged and collected from the subscriber. It does not matter as far as Orange County is concerned whether the Commission requires a low rate up front or subsequently requires a reduction of the rate which creates the excess profit. It is only the amount ultimately charged to the subscriber for the access service which is subject to the County’s tax.[4] A tax based on a charge greater than the subscriber is actually required to pay is simply illegal. This is because the statutory authorization for the tax limits the tax to the purchases of local telephone service. If for any given month the customer is permitted to purchase the service for less, for any reason, it is only that purchase price which is subject to the tax.
Suppose BellSouth had complete discretion in how best to reimburse its subscribers for actual or anticipated excess profit. Could it not, consistent with law, choose to reduce its charge for access to its service in order not only to give its subscribers the benefit derived from its extraordinarily good year but also to reduce its subscribers’ tax liability? Since Orange County has no control over the actual charge for this service, how can it complain if Bell-South elects to reduce such charge? And why should it matter if it is the Commission, and not BellSouth, which decides to reduce the regulated rate regardless of its consequence on Orange County’s taxes?
AFFIRMED.
COBB, J., concurs.
ORFINGER, R.B., J., dissents with opinion.

. The access fee is similar to an admission fee to a charity auction at which the auctioneer agrees that if the auction brings more than a certain amount, the surplus will be returned to those attending by returning a portion of their admission fee.

. Although it may sound metaphysical, the problem in this case is not that the subscribers paid too much; it is simply that the telephone server, because of extraordinarily good business during the audit period, made too much. The subscribers only paid the regulated rate for access and a contracted amount for the other services. But for the extraordinary profit made by BellSouth during the audit period there would be no contention that these individual charges were excessive. But excessive profit was realized and it must be returned to those subscribers whose payments generated this excess. Since there is no showing in this record that the contract services were excessive, the Commission was justified in determining that the excess profit occurred only because the regulated rate generated too much income. Otherwise, if the contract services were deemed to be too high, relief should have been given to the advertisers or to those who had repairs made during the audit period or to others who paid for contract services deemed to be excessive and not to the general subscriber.

. The County argues that since the reduction of the current monthly charge is to compensate for the subscribers’ overpayment made during the audit period, the actual "charge” for the monthly service includes both the current billing and the forgiveness of the "debt" owed to the subscribers because of the overcharge. This logic, applied to the shoe analogy, would mean that the subscriber could never get a refund of the excess taxes paid. The recognition of the overcharge is not additional consideration; it is the reason for the discounted charge for current service. But even assuming that recognition of the previous overcharge must be counted as consider *478 ation for current service, it is irrelevant. The taxes on the “debt” owed to the subscribers have previously been paid.

. There is no significant difference from what was done in this case and a situation in which BellSouth, realizing that its profit for a given period was unusually high, even before an audit, simply decided to reduce its charge for access in order to bring its profit in line. Here there would be no reimbursement to the subscribers, only an adjustment of its charge for access in order to meet its profit limitation.