[Cite as *Musial Offices, Ltd. v. Cuyahoga Cty.*, 2020-Ohio-5426.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

MUSIAL OFFICES, LTD.,                          :

      Plaintiff-Appellee/                     :
      Cross-Appellant,                              No. 108478
                                              :

    v.
                                              :

COUNTY OF CUYAHOGA, ET AL.,                     :

      Defendants-Appellants/                  :
      Cross-Appellees.                        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** November 25, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-11-746704

---

***Appearances:***

Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti, Nicole T. Fiorelli, and James S. Timmerberg; Mellino Robenalt L.L.C., and Thomas D. Robenalt, *for appellee/cross-appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Brian R. Gutkoski, and Kenneth M. Rock, Assistant Prosecuting Attorneys; Greg G. Huth, Cuyahoga County Director of Law, and Joseph W. Boatwright, IV, Assistant Director of Law, *for appellants/cross-appellees.*

ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendants-appellants, Cuyahoga County, Armond Budish, and the Cuyahoga County Board of Revision (collectively "Cuyahoga County" or "the county"), appeal a judgment rendered in favor of plaintiff-appellee, Musial Offices, Ltd. ("Musial"), on behalf of a class of plaintiffs composed of Cuyahoga County property owners (collectively referred to as "Musial" or "plaintiffs"). The county claims the following five errors:

> 1. The trial court lacked subject matter jurisdiction to hear a case challenging the valuation of real property that was filed in the court of common pleas in an effort to bypass Ohio's comprehensive statutory administrative process that was established to adjudicate and resolve such complaints.
>
> 2. The trial court erred by entering judgment against Cuyahoga County, an Ohio political subdivision, on the basis of an alleged claim founded upon unjust enrichment.
>
> 3. The trial court erred by denying the appellants' motions to decertify the class after material factual variations among the purported class members emerged after the class was certified.
>
> 4. The trial court erred by awarding the plaintiff class prejudgment interest.
>
> 5. The trial court erred by ordering the county to pay the judgment to class counsel.

{¶ 2} Musial filed a cross-appeal and claims the following two assignments of error:

---

[1] The original decision in this appeal, *Musial Offices, Ltd. v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 108478, 2020-Ohio-3660, released on July 9, 2020, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

1. The trial court erred in denying Musial Offices' equal protection claim in its March 23, 2018 judgment entry.

2. The trial court erred in denying plaintiffs' statutory claim for illegal taxation in its March 23, 2018 judgment entry.

{¶ 3} Finding some merit to the county's appeal as well as Musial's cross-appeal, we affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court (1) to enter judgment in favor of Musial and the plaintiff class on their illegal taxation claim and (2) to vacate the trial court's award of prejudgment interest.

## I. Facts and Procedural History

{¶ 4} Musial brought this class action to recover the overpayment of real property taxes on behalf of itself and members of a certified class of similarly situated property owners. Musial is the owner of real property located in Westlake, Ohio. In 2005, the Cuyahoga County auditor[2] assigned a tax value of $679,500 to Musial's property for the 2006, 2007, and 2008 tax years. Following the start of the Great Recession in December 2007, real estate values declined, and Musial filed a decrease complaint with the Cuyahoga County Board of Revision for the 2008 tax year. The Westlake Board of Education filed a counterclaim seeking to retain the auditor's valuation.

{¶ 5} Real property tax is based on a percentage of the property's taxable value. Pursuant to R.C. 5713.01(B), the county auditor is required to determine the

---

[2] On January 11, 2011, Cuyahoga County converted to a charter form of government pursuant to Article X, Section 3, Ohio Constitution. The new Cuyahoga County Charter created the position of a Fiscal Officer, who is appointed by the County Executive, to replace the formerly elected auditor position.

taxable value of real property through periodic appraisals, known as sexennial and triennial appraisals. R.C. 5713.01(B). The sexennial appraisal, which is conducted every six years, requires the auditor to actually "view and appraise" the property. R.C. 5713.01(B). A triennial appraisal, also referred to as a "statistical update," is conducted three years after the last sexennial appraisal and does not require the auditor to view the property. (Tr. 304, 321.) The triennial appraisal is based on statistical data, such as property sales and construction in the surrounding community. (Tr. 306.) The statistical data is used to generate a "use factor" applied to all properties in a particular area based on an estimation of the average percentage of appreciation or depreciation in value of the properties since the last appraisal. (Tr. 246-248.) By applying the use factor, all parcels within a specific class are reappraised up, down, or without a change, by the same percentage amount.

{¶ 6} A property owner may challenge the auditor's valuation for a current tax year, regardless of whether the auditor reappraised the property that year, by filing a decrease complaint with the county auditor by March 31st of the following tax year. R.C. 5715.19(A)(1)(d). Because real property taxes are billed almost one year behind, a taxpayer is billed in December for the first half of a tax year based on the property's value as of January 1st of that same year. A taxpayer challenging the tax value of property for the 2008 tax year would have until March 31, 2009, to file the complaint.

{¶ 7} If a complaint is filed with the auditor, the auditor is required to present it to the county's board of revision to "hear complaints and revise assessments of

real property for taxation." R.C. 5715.01(B). As part of the process, the auditor must notify the local board of education of the taxpayer's complaint within 30 days of March 31, whereupon the board of education, the recipient of a large percentage of the tax collected, may file a counterclaim against the value within 30 days, i.e., by April 30th. R.C. 5715.19(A)(1). Pursuant to R.C. 5715.19(C), the board of revision "shall hear and render its decision on a complaint" within 90 days of the date the property owner's complaint was filed with the board, or, if the board of education asserted its own challenge to the value, within 90 days of the board's counterclaim. Thus, the board of revision is statutorily required to render a decision on a complaint with a counterclaim no later than 120 days after April 30th, i.e., before the end of August. The auditor records property values in a database called Sigma. (Tr. 302.)

{¶ 8} The Cuyahoga County auditor conducted a sexennial reappraisal of properties within the county in 2006, and valued Musial's property at $679,500. When real property values declined in 2008 during the Great Recession, Musial filed a complaint against the valuation of its property in January 2009, for the 2008 tax year.[3] Following the board of revision hearing, on January 13, 2010, Musial received a letter of correction from Frank Russo ("Russo"), who served as both the county auditor and secretary of the board of revision. The letter stated that the tax value of Musial's property was reduced to $499,000 for the 2008 tax year. The letter further

---

[3] In a typical year, the Cuyahoga County auditor received between 2,000 and 3,000 complaints. The auditor might have received between 6,000 and 7,000 complaints in an unusually busy year. The auditor received 25,000 decrease complaints for the 2008 tax year and another 20,000 complaints for the 2009 tax year. (Tr. 228.)

stated: "If no action is taken, the Board's decision will be reflected in your next tax bill."

{¶ 9} Musial paid the December 2009 tax bill for the first half of 2009 without protest even though the bill reflected the $679,500 valuation of the property. Mark Musial, Musial's principal, testified at trial that he did not believe any further action was necessary to correct the tax bill since the correction letter indicated the correction would be reflected in Musial's next tax bill. However, in June 2010, Musial received a property tax bill for the second half of 2009 that reflected a tax value of $679,500 instead of the board of revision's reduced amount of $499,000. By then, the deadline to appeal the 2009 tax value to the board of revision had expired.

{¶ 10} Meanwhile, the auditor conducted a statistical update for the triennium beginning in 2009, and determined that the reappraised value of Musial's property would be the 2008 value, multiplied by a factor of one. (Tr. 324.) In other words, the tax value of the property for the next triennium (2009, 2010, and 2011) remained the same as the 2008 value. (Tr. 324-325.) However, the auditor did not use the correct 2008 tax value of the property, i.e., $499,000, when he applied the "use factor" for the triennial update because the auditor did not receive the board of revision's decision on Musial's decrease complaint until January 2010, after the triennial update had already been completed. After receiving the board of revision's decision, the auditor updated the correct value of $499,000 of Musial's property for the 2008 tax year in the Sigma database, but never corrected the value for the 2009 tax year, or any subsequent tax years in the triennium.

{¶ 11} After receiving the tax bill for the second half of the 2009 tax year, which still reflected a value of $679,500, Musial sent a letter to the auditor and the board of revision asking them to correct the mistake. Martin Murphy ("Murphy"), the acting administrator of the board of revision, informed Musial that the county recognized there was a problem and was endeavoring to fix it. Meanwhile, the Cleveland Plain Dealer reported stories that numerous property owners had been overcharged in their 2009 property tax bills. When the county failed to correct Musial's tax bill and issue a refund of the amount of overpaid taxes, Musial filed a class action complaint in the Cuyahoga County Common Pleas Court in January 2011. Musial twice amended its complaint and asserted claims for disgorgement, unjust enrichment, due process and equal protection, injunctive relief, the imposition of an illegal tax in violation of R.C. 2723.01, and extraordinary relief in mandamus.

{¶ 12} Musial later moved for class certification. Meanwhile, the county moved to dismiss Musial's second amended complaint, arguing the trial court lacked jurisdiction because Musial failed to exhaust its administrative remedies by appealing the board of revision's decision to the board of tax appeals. The trial court denied the county's motion to dismiss and denied Musial's motion for class certification. Both Musial and the county appealed.

{¶ 13} On appeal, this court found that the trial court had subject matter jurisdiction to hear Musial's case because Musial was not challenging the board of revision's valuation of its property; it was merely seeking to enforce its valuation, and R.C. 2723.01 expressly confers jurisdiction on the common pleas court to hear

claims for the recovery of overpaid taxes. *Musial Offices, Ltd. v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 99781, 2014-Ohio-602, ¶ 16 ("*Musial I*"). This court also reversed the trial court's judgment denying class certification and ruled that Musial's claims were not barred by the one-year statute of limitations set forth in R.C. 2723.01.

{¶ 14} On remand, the trial court certified the following class:

Cuyahoga County property owners who filed a complaint against valuation for tax year 2008 that resulted in the Board of Revision reducing the taxable value of the property, whose 2009 value was taxed using a higher value.

{¶ 15} Thereafter, the county filed a third-party complaint against the Ohio state tax commissioner and filed a motion for judgment on the pleadings, arguing, among other things, that it was immune from liability for the plaintiffs' claims pursuant to sovereign immunity provided by R.C. Chapter 2744. The court partially granted the county's motion for judgment on the pleadings and dismissed the plaintiffs' claims for disgorgement and injunctive relief alleged in Counts 1 and 4 of the second amended complaint. The court also dismissed the county's third-party complaint against the Ohio tax commissioner.

{¶ 16} The county had also filed a motion to dismiss for lack of subject matter jurisdiction and for Musial's failure to join all taxing authorities within Cuyahoga County as necessary and indispensable parties. The trial court denied the county's motion to dismiss and denied the county's claim for sovereign immunity under R.C. Chapter 2744 on grounds that none of Musial's claims alleged negligence.

{¶ 17} A bench trial began in September 2015. The trial court empaneled an advisory jury on its own motion pursuant to Civ.R. 39(C)(1). The advisory jury returned a verdict in favor Musial on its claim for unjust enrichment. The trial court declined to adopt the verdict at that time, but indicated the jury's advisory verdict would be taken into account when the court decided the merits of all of Musial's claims and the county's defenses.

{¶ 18} The court later heard arguments on the claims not tried to the jury and rendered findings of fact and conclusions of law on March 23, 2018. The court found in favor of the county on the plaintiffs' due process and equal protection claims alleged in Count 3 of the second amended complaint. The court also found in favor of the county on the plaintiffs' illegal taxation claim alleged in Count 5. However, the trial court found in the plaintiffs' favor on its unjust enrichment claim alleged in Count 2 of the second amended complaint and ordered the county to make restitution to the plaintiff class in the amount of $3,927,385.91. Having made an award for unjust enrichment, the trial court determined the plaintiffs' claim for mandamus, alleged in Count 6, was moot because the unjust enrichment claim afforded the plaintiffs an adequate remedy at law.

{¶ 19} Thereafter, the plaintiffs moved for prejudgment interest pursuant to R.C. 1343.03(A), for attorney fees equal to 50 percent of the $3,927,385.91 restitution award, and for a separate incentive compensation award to Musial in the amount of $25,000. The county opposed the plaintiffs' motions and filed a motion for class decertification and set-off. The trial court denied the county's motion to decertify the class and entered final judgment in favor of the plaintiff class in the

amount of $3,927,385.91, plus prejudgment interest in the amount of $871,454.31, plus interest at the statutory rate from February 28, 2018, on $3,927,385.91 until paid, plus court costs. The court further awarded class counsel attorney fees equal to 50 percent of the judgment, in the amount of $2,399,420.11, and granted Musial an additional incentive compensation award of $25,000.00.

{¶ 20} Both parties again appeal the trial court's judgment. We discuss Musial's assigned errors and the errors assigned in the cross-appeal out of order because they are interrelated.

## II. Law and Analysis

### A. Jurisdiction

{¶ 21} In the first assignment of error, the county argues the trial court lacked jurisdiction to hear Musial's case because its claims constituted a challenge to the valuation of its real property, and such claims must proceed through a statutorily prescribed administrative process. The county contends that Musial and members of the plaintiffs' class illegally attempted to circumvent a statutory scheme that requires them to exhaust their administrative remedies before invoking the common pleas court's jurisdiction.

{¶ 22} However, the county previously raised this argument in *Musial I*. *See Musial Offices, Ltd.*, 8th Dist. Cuyahoga No. 99781, 2014-Ohio-602, ¶ 8-17. In *Musial I*, we held that Musial was not required to exhaust its administrative remedies before filing its complaint in the common pleas court because Musial was not challenging the valuation of its property; it was seeking an order enforcing the board of revision's valuation of its property pursuant to R.C. 2723.01. *Id.* at ¶ 16.

**{¶ 23}** Our previous determination that the trial court had jurisdiction to hear Musial's claims is the law of the case. Under the law of the case doctrine, "the decision of a reviewing court in a case remains the law of that case on legal questions involved for all subsequent proceedings in the case at both trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984); *accord Rimmer v. CitiFinancial Inc.*, 8th Dist. Cuyahoga No. 108081, 2020-Ohio-99, ¶ 43.

**{¶ 24}** "The law of the case doctrine is rooted in principles of res judicata and issue preclusion." *State v. Harding*, 10th Dist. Franklin No. 10AP-370, 2011-Ohio-557, ¶ 16, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 35. It ensures consistency of results in a case, prevents endless litigation by settling the issues, and preserves the structure of superior and inferior courts as designed by the Ohio Constitution. *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404, 659 N.E.2d 781 (1996).

**{¶ 25}** Our prior decision in *Musial I*, that the trial court had jurisdiction to hear Musial's claims because Musial's claims did not involve a valuation of real property but rather sought recovery of overpaid taxes under R.C. 2723.01, is the law of the case. Therefore, the county's first assignment of error is overruled.

## B. Unjust Enrichment

**{¶ 26}** In the county's second assignment of error, it argues the trial court erred in entering judgment against it on Musial's unjust enrichment claim.

**{¶ 27}** Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another[.]" *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). Restitution is the remedy for unjust

enrichment "'to prevent one from retaining property to which he is not justly entitled.'" *San Allen v. Buehrer*, 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071, ¶ 114, quoting *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 256, 141 N.E.2d 465 (1957).

{¶ 28} To establish a claim for unjust enrichment, a plaintiff must prove, by a preponderance of the evidence, that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained that benefit under circumstances in which it would be unjust for him to retain that benefit. *Id.*; *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20.

{¶ 29} The county contends the trial court erred in entering judgment against it on the plaintiffs' unjust enrichment claim because, as a blanket rule, governmental entities cannot be held liable for unjust enrichment under Ohio law under any circumstances. However, "Ohio courts have long recognized persons for whom funds have been unlawfully collected and retained by the state may be entitled to equitable restitution." *San Allen* at ¶ 123, citing *State ex rel. Zone Cab Corp. v. Indus. Comm.*, 132 Ohio St. 437, 8 N.E.2d 438 (1937). *See also Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441 (Plaintiff could bring an action against the Ohio Bureau of Workers' Compensation in the common pleas court for unjust enrichment.); *Lycan v. Cleveland*, 8th Dist. Cuyahoga No. 94353, 2010-Ohio-6021, *overruled on other grounds*, *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593 (Plaintiffs may pursue unjust enrichment claims against a city for improper collection of traffic fines.);

*Barrow v. New Miami*, 12th Dist. Butler No. CA2017-03-031, 2018-Ohio-217 (Plaintiffs may pursue unjust enrichment claims against a city for improper collection of traffic fines.).

{¶ 30} Nevertheless, in support of its argument that governmental entities cannot be held liable for unjust enrichment, the county cites several cases including *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio App.3d 33, 713 N.E.2d 1075 (8th Dist.1998); *Sylvester Summers, Jr. Co., L.P.A. v. E. Cleveland*, 8th Dist. Cuyahoga No. 98227, 2013-Ohio-1339, ¶ 26; and *Alpha Plaza Invests., Ltd. v. Cleveland*, 2018-Ohio-486, 105 N.E.3d 680, ¶ 6 (8th Dist.).

{¶ 31} In *Kraft*, this court stated, in relevant part:

> It is a long-standing principle of Ohio law that "all governmental liability *ex contractu* must be express and must be entered into in the prescribed manner, and that a municipality or county is liable neither on an implied contract nor upon a quantum meruit by reason of benefits received."  20 O.Jur.3d "Counties, Townships and Municipal Corporations" § 278 at 241.

*Kraft* at 44.

{¶ 32} However, the decisive term in the quotation is "*ex contractu*," which means "[a]rising from a contract."  *Black's Law Dictionary* 608 (8th Ed.2004). Regarding government contracts, the *Kraft* court explained:

> "Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes and decided cases, is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves.  If the contract is executed, no action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party of the other side."

*Id.* at 44, quoting *Buchanan Bridge Co. v. Campbell*, 60 Ohio St. 406, 419-420, 54 N.E. 372 (1899).

{¶ 33} The policy precluding *ex contractu* claims against governmental entities is based on the principle that a "municipality cannot enter into a contract * * * except by ordinance or resolution of its counsel." *Wellston v. Morgan*, 65 Ohio St. 219, 62 N.E. 127 (1901); *see also Cooney v. Independence*, 8th Dist. Cuyahoga No. 66509, 1994 Ohio App. LEXIS 5290, *5 (Nov. 23, 1994) ("[M]unicipalities may not be bound to a contract unless the agreement is formally ratified through proper channels."). The *Wellston* court explained, "it devolves upon those who deal with public officers, to see for themselves that the statutes have been complied with." *Id.* at 229. If the statutes have not been complied with, the contract is void, and the municipality or county cannot be held liable on claims for an implied contract or quantum meruit even if the county or municipality received benefits from the exchange. *Kraft* at 44. The rationale is that "if a party to a contract not complying with the formalities required by law for municipal contracts could recover on an implied contract, then the purposes of the General Assembly, in requiring such formalities, would be circumvented." *Indian Hill v. Atkins*, 153 Ohio St. 562, 570, 93 N.E.2d 22 (1950). It is, therefore, against public policy to permit a party, who could have insisted on compliance with statutory formalities, to recover on an equitable theory, such as unjust enrichment, for performance rendered under a void municipal contract. *Id.*; *see also Sylvester Summers, Jr. Co., L.P.A.*, 8th Dist. Cuyahoga No. 98227, 2013-Ohio-1339 (Attorney could not recover fees for services

rendered to city on a theory of unjust enrichment where contract was unenforceable due to failure to comply with statutory requirements.).

{¶ 34} Despite the county's argument to the contrary, we affirmed an award of unjust enrichment against a municipality in *Kraft,* because the city unjustly retained benefits conferred by Kraft, and there was no contract, bargain, or exchange of goods or services between Kraft and the county. *See Kraft* at 45. Similarly, in *San Allen*, 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071, this court held that employers could recover the overpayment of workers' compensation premiums from the Ohio Bureau of Workers' Compensation ("BWC") because "where the state collects and retains funds to which the state is not lawfully entitled, those funds must be returned as the equities require." *Id.* at ¶ 126. Indeed, the Restatement of the Law of Restitution holds that "payment of a tax that is erroneously or illegally assessed or collected, gives the taxpayer a claim in restitution against the taxing authority as necessary to prevent unjust enrichment." Restatement of the Law 3d, Restitution and Unjust Enrichment, Section 19(1) (2011). Therefore, a plaintiff may recover damages on an unjust enrichment claim against the government under certain circumstances.

{¶ 35} All of the cases cited by the county in support of its argument involve *ex contractu* claims, except for *Kraft,* and *Morton v. Murray*, 8th Dist. Cuyahoga No. 106759, 2018-Ohio-5178. As previously stated, in *Kraft,* we affirmed a judgment on a claim for unjust enrichment against the county because the county unjustly retained a benefit conferred on it by Kraft and the benefit did not result from any form contract or quasi-contract. Thus, *Kraft* is consistent with the

precedent of this court and of the Ohio Supreme Court, which holds that although governmental entities cannot be held liable for unjust enrichment arising *ex contractu*, governmental entities may nevertheless be liable for unjust enrichment in cases not involving bargained-for benefits where the government unjustly "'retains money or benefits which in justice and in equity belong to another.'" *San Allen*, 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071, at ¶ 114, quoting *Smith v. Vaughn*, 174 Ohio App.3d 473, 2007-Ohio-7061, 882 N.E.2d 941, ¶ 10 (1st Dist.2007), quoting *Johnson*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791 at ¶ 20.

{¶ 36} In *Morton*, an attorney filed a complaint against the Cuyahoga County treasurer to recover attorney fees incurred for his work before the board of revision, which lead to a reduction of real estate taxes for his clients. The trial court granted summary judgment to the treasurer because the treasurer could only credit an overpayment of taxes to the person who overpaid them, and the lawyer stipulated that he never paid any tax on the property. *Id.* at ¶ 2. In affirming summary judgment in favor of the county treasurer, this court held that the treasurer was not liable for unjust enrichment because the lawyer "had no right to any overpayment of real estate taxes because the credit for overpayment belongs to the person who made the payment." *Id.* at ¶ 6. Nevertheless, this court further held that "a county, like a municipality, cannot be held liable for unjust enrichment." *Id.* at ¶ 5.

{¶ 37} The county argues that pursuant to *Morton,* 8th Dist. Cuyahoga No. 106759, 2018-Ohio-5178, we must similarly hold that the county, as a government entity, cannot be held liable for unjust enrichment under any circumstances.

However, the court in *Morton* did not address Ohio Supreme Court precedent expressly holding that plaintiffs may maintain unjust enrichment claims against the government. In *Santos*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, the Ohio Supreme Court specifically held that an employee could bring an unjust enrichment claim against the BWC in a court of common pleas to recover funds that were wrongfully collected by the state. *Id.* at ¶ 17. Rather than citing *Santos*, the *Morton* court relied on *NaphCare, Inc. v. Cty. Council of Summit Cty.*, 9th Dist. Summit No. 24906, 2010-Ohio-4458.

{¶ 38} In *NaphCare*, the plaintiff provided healthcare services to inmates at the Summit County jail and sued the county for unpaid services. The county argued the contract was void because the amount the plaintiff sought was not properly certified under R.C. 5705.41(D)(1). *Id.* at ¶ 5. In affirming summary judgment in favor of the county, the Ninth District held that anyone who enters into a contract with the county bears the burden of ensuring that the contract "'complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.'" *Id.* at ¶ 22, quoting *The Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173, 214 N.E.2d 408 (1966). The *NaphCare* court held that because the contract was not formed in the statutorily prescribed manner, the contract was void, and the county could not be held liable for unjust enrichment. *Id.* at ¶ 23. *NaphCare* is consistent with cases holding that governmental entities cannot be held liable for unjust enrichment arising *ex contractu*.

{¶ 39} However, unlike *NaphCare*, or any of the *ex contractu* cases, neither Musial nor any member of the class, sought money for goods supplied or services

rendered. Nor did they attempt to evade rules pertaining to government contracts. Musial and the plaintiffs were overcharged property taxes due to a clerical error. As previously stated, "payment of a tax that is erroneously or illegally assessed or collected, gives the taxpayer a claim in restitution against the taxing authority as necessary to present unjust enrichment[.]" Restatement of the Law 3d, Restitution and Unjust Enrichment 19(1) (2011). Comment a of the Restatement further states that a taxpayer has "a prima facie claim in restitution to recover any payment of taxes, fees, or other governmental charges in excess of the taxpayer's true obligation." Therefore, despite this court's holding in *Morton*, the Ohio Supreme Court held in *Santos* that government entities may be held liable for unjust enrichment and ordered to pay restitution of funds that were wrongfully collected and retained by the government.

{¶ 40} However, since the Ohio Supreme Court decided *Santos*, the Ohio Supreme Court decided *Cleveland v. Ohio Bur. of Workers' Comp.*, Slip Opinion No. 2020-Ohio-337, which clarifies the limited circumstances under which a plaintiff may prevail on an equitable claim for unjust enrichment. In *Cleveland v. Ohio Bur. of Workers' Comp.*, the Ohio Supreme Court was asked to determine whether a common pleas court had jurisdiction over an employer's claim against the Ohio Bureau of Workers' Compensation for the reimbursement of alleged excessive premiums paid by the employer. Common pleas courts have jurisdiction over equitable claims against the state, but only the Ohio Court of Claims has jurisdiction over legal claims for restitution. *Id.* at ¶ 10. To answer this jurisdictional question,

the court had to determine whether a claim to recover the overpayment of premiums to the Bureau of Workers' Compensation was an equitable claim or a legal claim.

{¶ 41} The court held that a claim to recover overpayment of premiums is a legal, rather than an equitable claim, "if there is not a specifically identifiable fund, or traceable items on which the money from the fund was spent * * * ." *Id.* at ¶ 16. In concluding that the overpayment of premiums is a legal rather than an equitable claim, the court stated:

> [T]he [United States Supreme] court explained that a claim sounded in law if it sought to recover from a defendant's general assets rather than "specifically identified funds that remain in the defendant's possession." *Montanile v. Natl. Elevator Industry Health Benefit Plan Bd. of Trustees,* ___ U.S. ___ , 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016). The court further explained that "[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing * * * rather than a right to recover a sum of money generally out of the defendant's assets.' 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941) (Pomeroy)." (Ellipsis sic.) *Montanile* at , 136 S.Ct. at 658-659. The court stated that if there is not a specifically identifiable fund, or traceable items on which the money from the fund was spent, to seize, "the plaintiff could not attach the defendant's general assets instead." *Id.* at 659. In such a case, "[t]he plaintiff had 'merely a personal claim against the wrongdoer'—a quintessential action at law." *Id.,* quoting Restatement of the Law, Restitution, Section 215(1), at 866 (1936).
>
> Although the BWC kept track of the amount of Cleveland's premium payments, R.C. 4123.34(A), Cleveland's premiums went into a general insurance fund, R.C. 4123.30, i.e., they were not kept separate from payments made by other public employers. Once Cleveland's premium payment was deposited into the fund, it became commingled with the premium payments from other employers. And even if we considered the state insurance fund itself to be a specific fund, Cleveland paid the last funds it seeks to recover in 2009. It is inconceivable how money belonging to Cleveland could "clearly be traced to particular funds or property" in the BWC's possession, *see Great-West* [*Life & Annuity Ins. Co. v. Knudson*], 534 U.S. at 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (Historically, an equitable claim for restitution was one in which "money or property identified as belonging in good conscience to the

plaintiff could clearly be traced to particular funds or property in the defendant's possession"). The BWC has paid that money out as compensation to injured workers or refunds to covered employers. The money allegedly overpaid is no longer in the BWC's possession and cannot be recovered by a suit in equity. Thus, Cleveland's claim sounds in law and must proceed through the Court of Claims, which has exclusive jurisdiction over legal claims against the BWC.

*Cleveland* at ¶ 16-17.

{¶ 42} The county asserts that it "serves principally as a conduit that passes property taxes paid into the county treasury * * * onto other governmental entities, such as tax-supported school districts, cities, parks, and libraries[.]" (Appellants' brief at 28.) Indeed, the county treasurer is required by law to make semiannual distributions of the proceeds of real property taxes to local municipal corporations. R.C. 321.33; 2004 Ohio Atty Gen. Ops. No. 22, *5. Thus, the overpayment of taxes made by Musial and the class of plaintiffs did not remain in the county's general fund where their payments could be easily traced. Nor were their payments kept separate from payments made by other taxpayers; they were commingled with other taxpayers' payments and disbursed to various local municipalities. In short, the plaintiffs' overpayments in taxes are no longer in the county's possession and cannot be recovered by a suit in equity.

{¶ 43} We, therefore, sustain the county's second assignment of error.

### C. Illegal Taxation Claim

{¶ 44} We turn next to the second cross-assignment of error because it concerns Musial's statutory claim for illegal taxation, which represents an alternative theory to the plaintiffs' unjust enrichment claim. In this assigned error, Musial argues the trial court erred in dismissing its illegal taxation claim.

{¶ 45} Musial asserted its illegal taxation claim pursuant to R.C. 2723.01, which states, in relevant part:

> Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof * * * .

{¶ 46} In determining the taxable value of real property, R.C. 5713.03 requires the county auditor to determine the value of the property "from the best source of information available." Musial and the plaintiffs argue the county illegally collected their property taxes in violation of R.C. 5713.03 because the auditor used the inflated 2008 values when it calculated the 2009 statistical reappraisal and carried the inflated figures over for the 2010 and 2011 tax years, instead of using "the best source of information available," i.e., the board of revision's determination of the 2008 values.

{¶ 47} The county argues that although Musial successfully challenged the 2008 tax value of its property, a new value had to be determined by the county auditor for the 2009 tax year in the course of a triennial update, and Musial did not file a decrease complaint to challenge the 2009 tax value of its property by the March 31, 2010, deadline. The county further asserts that any determination made as to the 2008 value of Musial's property would not, under R.C. 5715.19(D), "carryforward" or "carryover" to 2009.

{¶ 48} Regarding the carryover of reduced property values, R.C. 5715.19(D) provides, in relevant part:

> The determination of any such complaint shall relate back to the date when the lien for taxes or recoupment charges for the current year attached or the date as of which liability for such year was determined.

Liability for taxes and recoupment charges for such year and each succeeding year until the complaint is finally determined and for any penalty and interest for nonpayment thereof within the time required by law shall be based upon the determination, valuation, or assessment as finally determined.

**{¶ 49}** Interpreting R.C. 5715.19(D), the Ohio Supreme Court explained that

When a subject property's value is reduced in the middle of a triennium update, the reduced value carries forward until the end of that triennium, and at the start of the next sexennial valuation, the auditor must reappraise the property and determine a new value going forward.

*State ex rel. Mars Urban Sols., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 155 Ohio St.3d 316, 2018-Ohio-4668, 121 N.E.3d 311, ¶ 11. The county argues that because the 2009 tax year was the start of a new triennial, the 2008 tax value of Musial's property did not "carryover" into 2009.

**{¶ 50}** However, the 2008 value was the starting point for the triennial statistical update, which became effective on January 1, 2009. James Hopkins ("Hopkins"), who worked in the Cuyahoga County Auditor's Office from 1986 through 2011 and currently serves as director of real estate appraisals in the Cuyahoga County Fiscal Office, testified that in conducting the 2009 triennial update, the auditor applied a factor of one to the 2008 value of Musial's property, which meant that the value of Musial's property neither increased, nor decreased in 2009. Under the valuation for the new triennium beginning in 2009, the value of Musial's property remained the same as the 2008 tax value determined by the board of revision. Yet, Musial paid taxes on a $679,500 valuation, when the property was actually valued at $499,000 for the triennium beginning in 2009.

**{¶ 51}** Hopkins testified that if the correct 2008 tax year value of $499,000 had been used for the 2009 triennial update, then the 2009 value of Musial's property would have been $499,000 instead of the $679,500 reflected in the tax bill. Hopkins also stated that when the auditor received the board of revision's decision, the auditor changed the value of Musial's property for the 2008 tax year to $499,000 in the Sigma database, but never corrected the value for the 2009 tax year, or any subsequent years in the triennium. (Tr. 328.) Therefore, the county knew, or should have known, that it collected an overpayment of taxes from Musial for the 2009 tax year. Moreover, Musial notified the auditor of its mistake in writing, and the auditor's failure to provide a refund of the overpayment prompted Musial to file the initial complaint in this case.

**{¶ 52}** As previously stated, R.C. 2723.01 creates a cause of action to recover taxes that were collected illegally. The term "illegal" is defined as "not according to or authorized by law." Merriam-Webster.com Dictionary, "*Illegal*," available at Merriam-Webster, https://www.merriam-webster.comdictionary/illegal (accessed June 3, 2020). The county is authorized to levy real estate taxes on real property pursuant to R.C. 5705.03, and the county auditor is authorized to determine the taxable value of the real property pursuant to R.C. 5713.03. However, the auditor did not calculate the tax value of the plaintiffs' properties "from the best source of information available" as mandated by R.C. 5713.03. Therefore, the county collected taxes in excess of the amounts owed by the plaintiffs in violation of R.C. 5713.03. *See Orange Cty. v. Bellsouth Telecommunications*, 812 So.2d 475, 478 (Fla. 2002)

("A tax based on a charger greater than the subscriber is actually required to pay is illegal.").

{¶ 53} Any taxes levied against property in excess of the amount determined by the auditor in accordance with applicable statutes is illegal because they were not authorized by law. In Musial's case, the difference between the amount of taxes paid on the erroneous value of its property (i.e., $679,500) and the taxes that should have been paid on the correct value of the property (i.e., $499,000) constitutes the amount of illegal taxes collected from Musial because the excess amount was not authorized by law. The same calculation may be made for members of the class who overpaid taxes due to the erroneous overvaluation of their properties.

{¶ 54} The trial court dismissed the plaintiffs' illegal taxation claim on grounds that the county treasurer did not know he overcharged the plaintiffs when he sent their tax bills because the county auditor had not updated the correct property values in the county database. However, R.C. 2723.01 does not require proof of knowledge, intent, or any other mens rea. The statute simply provides that common pleas courts may entertain actions to recover illegally collected taxes. *See* R.C. 2723.01. The lack of a mens rea in the statute makes sense since the plaintiffs cannot recover overpayment of taxes under an unjust enrichment theory, and immunity would bar their recovery if the statute limited recovery to the negligent over-collection of taxes. R.C. 2723.01 was enacted to address the very situation presented in this case, i.e., to allow taxpayers to recover refunds for the overpayment of taxes that have been collected and retained by the government in violation of the law.

{¶ 55} The county nevertheless argues that plaintiffs' illegal taxation claim is barred by their failure to pay their property taxes under protest along with a notice of intent to sue as mandated by R.C. 2723.03.

{¶ 56} R.C. Chapter 2723 sets forth general provisions governing the court's jurisdiction over claims to recover taxes illegally collected from any taxing authority in the state. As previously stated, R.C. 2723.03 provides that unless a taxpayer pays taxes under protest together with notice of his intention to sue, his action to recover the overpayment of taxes will be dismissed on grounds that the taxes were voluntarily paid.

{¶ 57} In contrast to the general provisions in R.C. Chapter 2723, R.C. Chapter 5715 sets forth specific provisions regarding a county board of revision's role in the assessment of real property taxes. As relevant here, R.C. 5715.22 provides an exception to the general rule set forth in R.C. 2723.03 requiring a taxpayer to pay taxes under protest with a notice of intent to sue in order to preserve the right to sue to recover the overpayment of taxes. R.C. 5715.22 states, in relevant part:

> If upon consideration of any complaint against the valuation or assessment of real property filed under section 5715.19 of the Revised Code, or any appeal from the determination on such complaint, it is found that the amount of taxes, assessments, or recoupment charges paid for the year to which the complaint relates was in excess of the amount due, then, *whether or not the payment of said taxes, assessments, or charges was made under protest* or duress, the county auditor shall, within thirty days after the certification to him of the final action upon such complaint or appeal, credit the amount of such overpayment upon the amount of any taxes, assessments, or charges then due from the person having made such overpayment and at the next or any succeeding settlement the amount of any such credit shall be deducted from the amounts of any taxes, assessments, or charges distributable to the county or any taxing unit therein which has

received the benefit of the taxes, assessments, or charges previously overpaid, in proportion to the benefits previously received.

(Emphasis added.) R.C. 5715.22 provides a limited exception to the general rule set forth in R.C. 2723.03 requiring payments under protest for "complaints against valuation * * * of real property filed under R.C. 5715.19 of the Revised Code." The exception likely exists because the procedures outlined in R.C. 5715.19 obviate the need for making payments under protest and filing notices of an intent to sue since they require property owners to first challenge the valuations of their properties by filing complaints with the local boards of revision before bringing the action in the common pleas court. A decrease complaint filed in the board of revision demonstrates the property owner's objection, i.e., "protest," to the valuation of his or her property.

{¶ 58} Musial and the class of plaintiffs challenged the valuation of their properties by filing decrease complaints with the Cuyahoga County Auditor in accordance with R.C. 5715.19(A)(1)(d) before filing suit in the common pleas court. Following a hearing before the board of revision, Musial received a letter of correction from Frank Russo, stating that the tax value of Musial's property had been reduced to $499,000 for the 2008 tax year. The letter further stated: "If no action is taken, the Board's decision will be reflected in your next tax bill." Indeed, R.C. 5715.22 provides that the overpayment of real property taxes will be credited in subsequent tax bills regardless of "whether or not the payment of said taxes, assessments, or charges was made under protest * * *."

{¶ 59} Still, the county argues we are bound by the Ohio Supreme Court's decision in *Ryan v. Tracy*, 6 Ohio St.3d 363, 453 N.E.2d 661 (1983) and our decision in *Dean v. Cuyahoga Cty. Fiscal Office*, 8th Dist. Cuyahoga No. 107824, 2019-Ohio-5115, to find the plaintiffs' claims barred under R.C. 2723.03. In *Ryan*, the plaintiff brought a class action suit against the Franklin County Auditor, Franklin County Commissioners, and the Franklin County Treasurer, claiming they erred in assessing the plaintiffs' property taxes from 1975 through 1979 because they failed to deduct acreage of land committed to public highway use from the plaintiffs' property descriptions. The Ohio Supreme Court concluded that the plaintiffs' claims were properly dismissed because they failed to comply with the written protest and notice of intention to sue provisions of R.C. 2723.03. *Id.* at 365.

{¶ 60} Similarly, in *Dean*, the plaintiff filed suit to recover an alleged overpayment of property taxes in the amount of $60,000 from September 2003 through 2017. We affirmed the trial court's dismissal of the complaint on grounds that the plaintiff lacked standing to sue for the overpayment of taxes since he was not the property owner during the relevant time period and did not pay the taxes. However, we also held that because the plaintiff failed to assert that he paid the property taxes under protest as required by R.C. 2723.03, he failed to preserve any right to recover the alleged overpayment of taxes. *Dean* at ¶ 23.

{¶ 61} Unlike Musial, neither of the plaintiffs in *Dean* nor *Ryan* filed decrease complaints in the board of revision pursuant to R.C. 5715.19 to challenge the valuation of their properties before filing suit in the common pleas court. The exception set forth in R.C. 5715.22 applicable to decrease complaints filed pursuant

to R.C. 5715.19 did not apply in *Ryan* or *Dean* but applies to Musial's claims. Therefore, neither *Ryan* nor *Dean* are applicable to the facts of this case.

{¶ 62} The county nonetheless asserts that the exception set forth in R.C. 5715.22 only applied to Musial's taxes for the 2008 tax year, which are not at issue in this case because Musial received a refund for that year pursuant to R.C. 5715.22. The county argues that because Musial did not receive a "final action" on a valuation complaint for the 2009, 2010, and 2011 tax years, R.C. 5715.22 is inapplicable and its claims to recover the overpayment of taxes for these years should have been dismissed pursuant to R.C. 2723.03.

{¶ 63} However, Musial's action to recover overpayment of taxes for the 2009, 2010, and 2011 tax years originates from, and is inextricably tied to, its complaint against the 2008 valuation of its property. As previously stated, Musial filed a decrease complaint against the valuation of its property in January 2009, for the 2008 tax year. Musial did not receive a decision regarding its complaint until January 2010, when Russo sent Musial a correction letter advising Musial that "[i]f no action is taken, the Board's decision will be reflected in [its] next tax bill." Mark Musial testified at trial that he did not believe further action was necessary to correct the tax bill since the correction letter indicated the county would automatically make the correction. Furthermore, Mark Musial sent a letter to the auditor and the board of revision asking them to correct the mistake, and Murphy reassured him that the county would fix it. For the county to now claim that Musial's complaint should have been dismissed because it paid its taxes without protest is unconscionable under these circumstances.

{¶ 64} Under the facts and circumstances of this case, we can only conclude that Musial's class action complaint to recover overpayment of taxes for the 2009, 2010, and 2011 tax years constitutes a single action arising from its original decrease complaint filed in 2009, particularly since the revised 2008 value was used to calculate the property's value for the 2009, 2010, and 2011 tax years and carried forward for those years pursuant to R.C. 5715.19(D). R.C. 5715.19(D) states that "[t]he determination of any such complaint shall relate back to the date when the lien for taxes or recoupment charges for the current year attached or the date as of which liability or such year was determined." Therefore, Musial and the members of the plaintiffs' class were entitled to credits, pursuant to R.C. 5715.22, of the amounts they overpaid for the 2009, 2010, and 2011 tax years even though they dutifully made those payments without protest.

{¶ 65} The second cross-assignment of error is sustained.

### D. Decertification of the Class

{¶ 66} In the county's third assignment of error, it argues the trial court erred in denying its motion to decertify the class. The county argues material fact variations among class members emerged after the class was certified that warranted class decertification.

{¶ 67} Following this court's mandate in *Musial I*, the trial court certified the following plaintiff class:

> Cuyahoga County property owners who filed a complaint against valuation for tax year 2008 that resulted in the Board of Revision reducing the taxable value of the property, whose 2009 value was taxed using a higher value.

{¶ 68} Class certification under Civ.R. 23 requires a plaintiff to establish that (1) an identifiable and unambiguous class exists, (2) the named representative of the class is a class member, (3) the class is so numerous that joinder of all members of the class is impractical, (4) there are questions of law or fact that are common to the class ("commonality"), (5) the claims or defenses of the representative plaintiff or plaintiffs are typical of the claims and defenses of the members of the class ("typicality"), (6) the representative parties fairly and adequately protect the interests of the class ("adequacy"), and (7) one of the three requirements of Civ.R. 23(B) is satisfied. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 6.

{¶ 69} After a class has been certified, Civ.R. 23(C)(1)(c) provides that an order granting class certification "may be altered or amended before final judgment." The county argues the trial court should have decertified the class after it became apparent that the commonality and predominance requirements were not met because it was impossible to individually calculate the restitution damages for each member of the plaintiffs' class. The county further asserts that each property owner's case presented its own specific issues for determination that could only be adjudicated through individual, fact-specific determinations.

{¶ 70} However, the record shows that all members of the class had the 2008 tax value of their properties reduced by the board of revision. The record also shows the auditor used the wrong 2008 tax value in conducting the triennial update for members of the class because the board of revision's decisions on their properties were issued after the auditor had already submitted values for the 2009 triennial

update. Shelly Davis, administrator of the board of revision, stated in a sworn affidavit that the "parcels and amounts provided in response to the class definition were reflective of the people who filed a 2008 [tax year] complaint with the Board of Revision but did not receive their hearing prior to the Auditor compiling the values for the 2009 triennial update." (Davis affidavit ¶ 5, attached to defendant's May 31, 2018 motion for hearing on set-off and on motion for decertification.) In other words, the only class members identified by the county are those for whom the auditor used an inflated value in calculating the triennial update.

{¶ 71} Nevertheless, the county argues, citing Davis's affidavit, that it was virtually impossible to calculate restitution damages for each individual member of the class due to a number of inconsistent variables. And the county asserts that some class members were not harmed. However, individual determinations on damages were not required because the parties stipulated to the plaintiffs' damages prior to trial. The stipulation, titled "Joint Damages Stipulation," was submitted to the trial court as Plaintiffs' exhibit No. 29. The stipulation states, in relevant part: "The parties stipulate that Exhibit A (which will be submitted in camera) accurately reflects those persons constituting the class in this case, including the amount of money each class member might be entitled to receive for [tax year] 2009, 2010, and 2011 if plaintiffs were to prevail on their claims in this matter." Having stipulated to the amount of restitution for each class member, there was no need to conduct individual calculations of damages. Therefore, all the requirements of class certification were maintained, and the trial court properly overruled the county's motion for decertification.

{¶ 72} The county's third assignment of error is overruled.

### E. Prejudgment Interest

{¶ 73} In the county's fourth assignment of error, it argues the trial court erred in awarding prejudgment interest to plaintiffs pursuant to R.C. 1343.03(A). The county contends the trial court's award of prejudgment interest should be reversed because prejudgment interest cannot be awarded on an unjust enrichment claim under R.C. 1343.03(A). However, because we have determined that plaintiffs could not recover on their unjust enrichment claim, the county's argument that a court may not award prejudgment interest on an unjust enrichment award is immaterial.

{¶ 74} Nevertheless, prejudgment interest may only be awarded where authorized by statute. *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 8th Dist. Cuyahoga No. 106234, 2018-Ohio-2844, ¶ 45. And Musial sought prejudgment interest pursuant to R.C. 1343.03(A), which states, in relevant part:

> [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

R.C. 1343.03(A).

{¶ 75} R.C. 1343.03(A) expressly authorizes the award of prejudgment interest on judgments arising out of tortious conduct and breach of contracts. But

none of Musial's claims are based on either torts or breach of contract. To the contrary, the county is liable on an illegal taxation claim under R.C. 5715.22. Nothing in R.C. 1343.03(A) authorizes the award of prejudgment interest on an illegal taxation claim. Moreover, R.C. 5715.22 "makes no provision for the payment of interest, but merely for the remittance of those real property taxes paid by the taxpayer in excess of the amount due." *Gen. Elec. Co. v. De Courcy*, 60 Ohio St.2d 68, 70, 397 N.E.2d 397 (1979). In *De Courcy*, the Ohio Supreme Court held that taxpayers are not entitled to interest on the overpayment of taxes in the absence of statutory authority. *Id.* Therefore, the trial court's award of prejudgment interest was granted in error since the award was based on an unfounded unjust enrichment claim, and there is no statutory authority for the award of prejudgment interest on an illegal taxation claim.

{¶ 76} The county's fourth assignment of error is, therefore, sustained.

### F. Payment to Class Counsel

{¶ 77} In the county's fifth assignment of error, it argues the trial court erred by ordering the county to pay the judgment of $3,927,385.91, plus prejudgment interest in the amount of $871,454.31 to class counsel. The county contends the judgment is "ill-advised as a matter of practicality" because some class members may not receive their refunds if they have died, sold their properties, or failed to pursue their claims. The county further asserts it is unfair to allow plaintiffs' counsel to reap a windfall by retaining unclaimed funds.

{¶ 78} However, unclaimed funds will not be distributed as a windfall to plaintiffs' counsel. The "determination of how the court disposes of the common

fund, or the unclaimed portion thereof, falls within the general equity powers of the court."  4 Conte & Newberg, *Newberg on Class Actions*, Section12:28 (5th ed.); *Six (6) Mexican Workers v. Arizona Citrus Growers* 904 F.2d 1301, 1307 (9th Cir. 1990), citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984) ("[C]ourts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.").

{¶ 79} Both plaintiffs' counsel and the trial court owe fiduciary duties to the class members, including the absent members.  *Wyly v. Milberg Weiss Bershad & Schulman, L.L.P.*, 12 N.Y.3d 400, 412, 908 N.E.2d 888 (2009) (Class counsel owe fiduciary duty to the entire class, including absent class members.); *Adame v. Law Office of Allison & Huerta*, Texas App. No. 13-04-670-CV, 2008 Tex. App. LEXIS 3912 (May 22, 2008) ("[C]lass counsel owes a fiduciary duty to protect the interests of absent class members."); *Ballard v. Martin*, 349 Ark. 564, 575, 79 S.W.3d 838 (2002) (A trial court has "duty to act as a fiduciary who must serve as guardian of the rights of absent class members.").

{¶ 80} The trial court's judgment entry, dated April 16, 2019, states, in relevant part, that "the court retains jurisdiction to administer the settlement and to make a further order regarding the disposition of funds in the hands of class counsel that remain unclaimed after diligent efforts to locate and remunerate all individual class members."  Thus, the trial court has acknowledged its fiduciary duty to the entire class and safeguarded against an unfair windfall to plaintiffs' counsel. Moreover, the county may participate in any matters involving unclaimed funds

and, therefore, has not been left "entirely out of the process."  (Appellant's brief at p. 40.)

{¶ 81} Therefore, the county's fifth assignment of error is overruled.

## G.  Equal Protection

{¶ 82} In Musial's first cross-assignment of error, it argues the trial court erred in dismissing its equal protection claim.  Musial contends the county discriminated against property owners who filed complaints against the valuation of their properties by using incorrect property values in calculating their property taxes for 2009, 2010, and 2011, while it used the correct property values to calculate the taxes on other properties.

{¶ 83} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws."  Ohio's Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, similarly states that "[a]ll political power is inherent in the people.  Government is instituted for their equal protection and benefit."

{¶ 84} The guaranty of equal protection prevents the government from treating people differently under its laws on an arbitrary basis.  *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 681, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (Harlan, J., dissenting.).  The equal protection provisions of the Ohio and United States Constitutions are functionally equivalent and are subject to the same analysis. *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 11, citing

*Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 59, 717 N.E.2d 286 (1999).

{¶ 85} Musial argues the county arbitrarily treated the class members differently from other property owners within the county because it used incorrect values to overvalue their properties while it used the correct values to appraise the value of other property owners' properties. Musial asserts "[t]here was no evidence at trial suggesting any legitimate purpose for the government overcharging Class Members on their taxes, and neither the trial court nor the government (in its pre-trial brief) articulated one." (Appellee's answer brief at p. 44.) Musial further contends that "[b]y using the wrong value for Class Members, but using the correct value for other taxpayers, the County violated Class Members' equal protection rights." (Musial's answer brief at p. 44.)

{¶ 86} However, we find no evidence that there was any government-established classification that separated Musial and members of the class from other property owners, apart from the fact that the class members successfully challenged the value of their properties for the 2008 tax year, and other property owners within the county did not. Any supposed "distinction" between the plaintiffs' class and other county taxpayers occurred as a result of plaintiffs filing complaints against the valuation of their properties for the 2008 tax year. As the trial court observed:

> [T]he plaintiff class and the taxpayers not in the class are not similarly situated. The members of the class all successfully contested their 2008 values; those taxpayers not within the plaintiff class did not. So the initial sorting of taxpayers into classes was not done by government fiat. Moreover, to the extent the plaintiff might argue that all of them are real state tax payers [sic] and only those who successfully contested their values are being discriminated against by the government, the

plaintiff has failed to show any intent to discriminate. There is no evidence that the county government ignored Musial Office's reduced 2008 value when calculating the basis for the 2009 triennial reappraisal as a means of punishing the plaintiff for successfully exercising its right to contest the value at the board of revision.

(Mar. 23, 2018 judgment entry p. 10.) There was no evidence that the county treated members of the class differently from other property owners; only that the class members sought a reduction in valuation of their properties, while other property owners did not. Therefore, we find no basis for Musial's equal protection claim.

{¶ 87} Musial's first cross-assignment of error is overruled.

{¶ 88} The trial court's judgment is affirmed in part and reversed in part. We remand the case to the trial court to enter judgment in favor of plaintiffs in the amount of $3,927,385.91 on the plaintiffs' illegal taxation claim.[4] The trial court is further instructed to vacate the award of prejudgment interest since such an award is not authorized on an illegal taxation claim.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

---

[4] The trial court's determination of damages in the amount of $3,927,385.91 for unjust enrichment accurately represents the total amount of damages on plaintiffs' illegal taxation claim because it was calculated based on the amount of illegally collected taxes.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR